## McLANE v. CROPPER.

Orphans' Court, Jurisdiction of; Partial Distribution of Estates; Wills; Trustees; Costs on Appeal.

1. Where an estate is ready for final distribution by the executors, except for the pendency of an appeal, which appeal does not operate as a supersedeas, the Supreme Court of the District of Columbia, holding a special term for Orphan's Court business, has jurisdiction under the Maryland Act of 1798, upon the petition of a legatee, to order such a partial distribution of the estate as will preserve the rights of all parties interested, whether the will be sustained or invalidated on the appeal.

2. If a will expressly provides that the trustee of a legatee for life shall apply the rents, issues and profits of the trust fund to the legatee's use, paying the same over to her, she is entitled to the income from the time of the testator's death; and a subsequent direction in the will to the trustee to pay over the principal and "all the accumulations," upon *the death of the* legatee, to certain other persons, does not show a contrary intent.

3. Where a trust fund consists in part of shares of stock in certain corporations, the increase in the capital stock of such corporations constitutes an accretion to the benefit of the fund and not a part of the dividends or income for the benefit of a life tenant.

4. A decree of the Orphans' Court directing the partial distribution of an estate, *held*, on appeal by the executors, to be too general and uncertain in certain of its terms to afford them adequate protection.

5. Where a fund is given by a will to a trustee with directions to pay over its income to a legatee during her life, the Orphan's Court has no jurisdiction over him as trustee, although he may also be an executor of the estate. Its only authority is to direct that the income be paid to the trustee, leaving his *cestui que trust* to hold him to account in equity.

6. If the original record on an appeal brought up by the appellants is sufficiently full, the costs of a *certiorari*, including transcript fees and charge for printing same, will be taxed against the appellee, although the decree appealed from be reversed.

No. 411. Submitted January 9, 1895. Decided February 4, 1895.

Hearing on an appeal by executors from an order of the Supreme Court of the District of Columbia, holding a special

term for Orphans' Court business, directing an accounting and partial distribution of an estate. *Reversed.*

The COURT in its opinion stated the case as follows :

This is an appeal taken by the executors from an order of the Supreme Court of the District, holding a special term for Orphans' Court business, made in the matter of the administration of the estate of Allan McLane, deceased.

Allan McLane died in the city of Washington, December 16, 1891, leaving a widow, Abby McLane, and one child, who is the appellee, Mrs. Anne Cropper. He had made a will and codicil thereto, which were offered for probate December 22, 1891, by the executors named therein, James L. McLane and Abby McLane. The will, after appointing the executors above named, and making certain devises and bequests, contains the following clause:

" Fifth. After the payment of my debts, expenses of probate of this my last will and testament, and of the legacies herein mentioned, I direct that the balance of my estate, real, personal, and mixed, of which I shall die possessed, or to which I shall be entitled at the time of my death, and wheresoever situate, be divided into two equal parts or shares, and I give and bequeath one part or share of the said two equal parts or shares unto my wife Abby, her heirs, executors or administrators, the same to be received by her in lieu of dower; the other or remaining part or share of the said two equal parts or shares of the balance of my said estate, in the event of my leaving me surviving a child or children of my wife Abby, or in the event of there being born to me of my wife Abby a posthumous child or children, I give, devise, and bequeath in fee unto my daughter Annie and to such child or children by my wife Abby, share and share alike. In the event, however, of my not leaving me surviving a child or children of my wife Abby, or in the event of there not being born to me of my said wife a posthumous child or children, then I give, devise, and bequeath the said other

remaining part or share of said two equal parts or shares of the balance of my said estate unto my brother, James L. McLane, his heirs, executors, and administrators, in trust, to take the rents, issues, and profits thereof and apply the same to the use of my said daughter Annie (paying the same over to her) for life, *and upon her death, to pay over the principal thereof, with all accumulations, to her children and grandchildren,* said grandchildren to take *per stirpes* and not *per capita.* And in case my said daughter Annie shall die without issue her surviving, then I direct my said trustee to divide the said remaining part of the two equal parts or shares of the balance of my said estate into ten equal parts or shares, which I give, devise, and bequeath as follows:

"(A) To my sister Mrs. Rebecca Hamilton, the income for life of one part or share, and at her death the principal is to fall back into this remaining part or share of my estate for division as hereinafter provided for.

"(B) To my niece Charlotte E. McLane, daughter of my deceased brother, Charles E. McLane, one part or share.

"(C) To my sister Mrs. Mary Hobbins, two parts or shares.

"(D) To my brother James L. McLane, three parts or shares.

"(E) To my nephew Allan McLane (son of my brother, James L. McLane), one part or share.

"(F) To my wife Abby, two parts or shares.

" Provided, however, that should any of the above-named party or parties in this division of the said remaining part of the two equal shares of the balance of my estate die during the lifetime of my daughter Annie, then I direct that the share or shares given to him, her, or them, as also the share given for life to my sister Rebecca Hamilton, shall be divided amongst those who may then survive in the proportions above mentioned."

January 22, 1892, Mrs. Cropper filed a caveat to the probate of the will and codicil, upon which issues were framed and transmitted for trial by jury in the Circuit Court.   The

decision was in favor of the caveatees, and this was affirmed on appeal to the General Term, and then certified back to the Orphans' Court, wherein, on February 23, 1893, the will was probated and letters testamentary issued. In May, 1893, Mrs. Cropper sued out a writ of error from the Supreme Court of the United States to review the judgment establishing the will, and the same is now pending, without supersedeas, in that court. April 19, 1894, Mrs. Cropper filed the petition, which raised the matter in controversy here, in the Orphans' Court, the allegations and prayers of which are substantially these:

(*a*) That the above-mentioned instruments, purporting to be the will and codicil of Allan McLane, had been admitted to probate, and letters testamentary granted to the executors named therein, who, having qualified as such, and given the notice to creditors to file their claims, the debts proved amounted only to $2,000; and that the executors had been required to give bond only in the sum of $3,000, upon their representation that the debts would not exceed, in their opinion, that sum, the testator having requested that his executors be not required to give bond.

(*b*) That the executors had not rendered an account of their administration, and their time for doing so had not been extended.

(*c*) That the petitioner, Mrs. Cropper, had resisted the probate of the alleged will, and had sought, and still seeks, by way of writ of error from the Supreme Court of the United States, to set aside the final judgment of the Supreme Court of the District of Columbia, maintaining the validity of said alleged last will and testament.

(*d*) That in case of a final decision or decisions as to the said alleged last will, in favor of Mrs. Cropper (in other words, if the will is eventually set aside), her share in the estate of her father would be much larger than what she gets under the will, and in no event could be less.

(*e*) That she has received nothing from the executors for or on account of her interest in the estate.

Upon these allegations, the petitioner asked that the court would pass an order directing the executors to do two things:

1. Forthwith to file their account as executors.

2. "To make such partial distribution, to such persons as are entitled, of accumulated and accumulating income, that would necessarily be received by such persons, whether such will be ultimately set aside or not."

On April 26, 1894, an order was passed directing the account to be made, and postponing the consideration of the prayer for distribution; the executors making no objection to rendering an account, though denying the jurisdiction of the court.

The account filed showed a personal estate of about $400,000 in bonds, stocks, etc., chiefly, to which were added items of interest, dividends, etc., received thereon. The executors credited themselves with many items of expenses, taxes, charges, etc., amounting to about $21,000. Objections were filed to this account, because it showed a merger of all interest and income of the personal estate since the death of the testator with the *corpus* of the fund, and the payment of expenses, charges, attorneys' fees, etc., from the income. The general objection to the whole was that the executors apparently held the said income as a part of the principal or *corpus* of the estate, and used it as such for purposes to which it is not properly applicable.

August 9, 1894, Mrs. Cropper filed another general objection to the account and the passage of the same, and prayed a hearing upon the said exceptions. On October 13, 1894, the executors moved the court for an order "directing the distribution of the entire estate in pursuance of the terms of the will." On October 23, 1894, upon consideration of the exceptions aforesaid, the following order or decree was made:

"It is by the court, this 23d day of October, A. D. 1894, ordered and decreed, that the said executor and executrix

proceed forthwith to make a partial distribution of the income of said estate accumulated in their hands *to the widow and heir at law* of said Allan McLane; provided that the distribution to the widow under this order shall not exceed the one-third of such income to which she will be entitled if the alleged will of said Allan McLane be set aside, and *the distribution to or for the heir at law* shall not exceed the income derived from one of the two residuary equal parts of said estate, as mentioned in the fifth paragraph of said will, to which the said heir at law may be entitled if the said will be sustained; and the income to which she may be entitled under said will shall be computed from the death of the said Allan McLane, subject to reduction by the application of a part of the *corpus* of the estate from which it arises as hereinafter ordered.

" The executor and executrix are hereby directed to file a supplemental and amended account setting forth the amount of income accrued since the death of said testator received by them from the collectors heretofore appointed or since received by them to the date of said report.

"And they are further directed to reserve for and on account of their commissions, which are hereby fixed at 5 per cent., and other expenses and the debts and obligations of said deceased for which credit may be claimed in said account, out of the *corpus* of the estate, an amount which, with interest thereon for the period of the collectorship and the administration, will be sufficient for the payment of the said expenses and debts, and to the extent of the interest so reserved the amount of the income distributable under this order shall be reduced, and the amount so reserved shall be applied to the expenses and debts aforesaid, for which credit is claimed in said account, subject to the future approval by this court of the credits so claimed."

On the next day (October 24) the court denied the executors' petition to make distribution, and no appeal has been taken therefrom. The executors, however, have appealed

from the order or decree requiring them to make the partial distribution aforesaid, and the cause is before us on the following assignment of errors:

The Orphans' Court erred in passing the order dated October 23, 1894, because—

1. The Orphans' Court thereby exceeded its jurisdiction and acted without any statutory authority.

2. The Orphans' Court thereby attempted to exercise the powers and jurisdiction of a court of chancery in administering the trust created by the will for the benefit of Mrs. Cropper, and this without any person having accepted the position of trustee for such trust.

3. The Orphans' Court thereby undertook to construe the terms of a will in regard to a trust, and, moreover, construed them erroneously.

4. The Orphans' Court did not and could not have the necessary parties before it to make such an order binding upon all concerned.

5. The Orphans' Court ignored an express provision in paragraph five of the will of Allan McLane; namely, that " all accumulations " be paid to any children or grandchildren Mrs. Cropper may leave, by directing that accumulations now on hand be paid to Mrs. Cropper herself. Such an order cannot afford any protection for the executor or executrix if they obey it.

6. The order appealed from is void for uncertainty, because it fixes no amounts which the executor and executrix are to pay, and in the last clause directs them (at their own peril in case of mistake) to compute and retain such an amount as will provide for uncertainties in the present and contingencies for an indefinite time in the future, without the court itself fixing any amount or any limits.

7. The order by its terms requires the executor and executrix to compute the " two residuary equal parts " of the estate before there is or can be, by law, any "residue," ascertained as such, and requires them to pay personal property to " the

heir at law" as such, whereas an heir at law is not entitled to personal property.

8. By the will of Allan McLane his executor and executrix are not given power to pay any amount to Mrs. Cropper.

*Mr. Enoch Totten, Messrs. Gordon & Gordon* and *Mr. Bernard Carter* for the appellants :

1. The Supreme Court of the District of Columbia, holding a special term for Orphans' Court business, had no power, in the existing condition of the litigation, to pass the order now appealed from.

2. The Supreme Court of the District, when holding a special term for Orphans' Court business, exercises the jurisdiction formerly exercised by the Orphans' Court of the District. *Ex parte McIntire*, 5 MacA. 293. As the law applicable to the jurisdiction of that court was the Maryland statute of 1798, Ch. 101, that being the only Maryland statute on this subject which was in force in 1801, and so made operative by act of Congress in the District of Columbia, we look to that statute for the power of the court passing the order appealed from.

Sec. 20, Subch. 15, of that act declares that "The Orphans' Court shall not under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred by law." *Scott* v. *Burch*, 6 H. & J. 79; *Brodess* v. *Thompson*, 2 H. & G. 120; *Conner* v. *Ogle*, 4 Md. Ch. 452.

Although by Sec. 12, Subch. 15, power, authority and jurisdiction is given to the Orphans' Court to examine, hear and decree on all accounts, etc., between legatees and persons entitled to any distributable portion of an intestate's estate, and executors and administrators, yet the court must, in so doing, proceed in accordance with the provisions of the said act, and cannot compel or authorize an executor to make distribution of an estate in his hands except at the times prescribed in the act.

The act of 1798, Ch. 101, has dealt specifically with the

question when, and in what manner, distribution shall be made.   Sec. 6, Subch. 10.   The provision is not for a piece-meal distribution of the estate in the hands of the executor, but the only distribution required or authorized is one to be made at a time when the executor has nothing more to do with the estate except to distribute it; and as it is then to be distributed to those entitled under the will, this of course presupposes that there is no question pending in court as to whether the will has any legal existence.

As the court is prohibited from exercising any jurisdiction not expressly conferred by law, it cannot compel an executor to make any partial distribution of the estate in his hands, until it has been determined whether the will, under which *alone* he has any *status or existence*, has any existence; and the court is equally without power or jurisdiction to compel the executor, when he does make distribution, to make it in any other way, and in any other proportion, than according to the terms of the will.

When the court directed the executors, pending the litigation involving the existence of the will, to make a partial distribution of the income to the widow and child of Allan McLane, it exceeded its jurisdiction, because the time had not come when it could pass any order for distribution of said estate, principal or income.

The court further exceeded its authority in compelling the executors to make said distribution, because, under the will, certain legacies were given, and until these had been paid, or securities set apart for payment of those given for the life of the legatees, it could not be ascertained what Mrs. Cropper was entitled to; and as it could not be known whether these legacies were payable until it was determined whether there was any will, the court has no power to determine what securities would be sufficient for this purpose and direct the executors to apply them for that purpose. The court did not even relieve the executors of this responsibility, but cast it upon them to adjudicate what whould be

the part of the estate the income from which Mrs. Cropper would be entitled to.

But independently of the pendency of the litigation as to the validity of the will, and of the evidence which its provisions afford that the executors cannot be compelled to make a partial distribution of the estate in their hands, this conclusion is confirmed by the fact that where the act of 1798 intended there should be a partial distribution, it was expressly provided. Section 7, Subch. 10, provides that, where a legatee is in *straitened circumstances* and the assets are largely more than sufficient to pay debts, the court may direct the payment to such legatee, of *a portion* of his legacy, *not more than one-third* thereof, on bond being given by such legatee. This is equivelent to an express declaration that this is the only case where an executor can be compelled to make any partial distribution.

3. But independently of all the foregoing, it is very clear that the Orphans' Court exceeded its jurisdiction in requiring the executors to distribute to Mrs. Cropper, or to or for her, the income from the portion of the estate devised for her benefit. By the will, she is not to receive from the executors any portion of the estate devised for her use; but the whole of this portion is devised to a trustee, who is to hold the same for her, under an active trust, and pay her the net rents, issues and profits.

That the Orphans' Court has no jurisdiction over trusts created by wills, see *O'Neill* v. *School Commissioners*, 27 Md. 227; *Conner* v. *Ogle*, 4 Md. Ch. 449; *State, use of Gable* v. *Cheston*, 51 Md. 580.

If it be claimed that under the order the executors are not required to pay the income "*to*" Mrs. Cropper, but only " to or *for* her," and, therefore, they may pay it to the trustee, it will be at once seen that this can make no difference as to the power of the court to pass the order; for by the will the executors are not authorized to pay the *income* to the trustee, but are required to deliver to him, at the proper time, the

*principal* bequeathed by the will to him as trustee; and said trustee has no power to receive said income from the executors, leaving in their possession the principal of the estate, and the Orphans' Court has no jurisdiction to require such trustee to receive said income, nor to direct the executors to pay it to him. And, moreover, the order adjudged the appellee to be entitled to the income from the death of the testator, whereas, that is a question beyond the jurisdiction of the court in this case.

4. The provisions of Sec. 19, Subch. 15, Ch. 101, of the act of 1798, have no bearing on the validity of the order in this case. This section provides that an appeal from the Orphans' Court shall not stay any proceeding therein which may with propriety be carried on before the appeal is decided, provided the Orphans' Court can provide for conforming to the decision of the court above, whether said decision may eventually be for or against the party appellant. This provision assumes that the action which the court may take, pending the appeal, is action which it is *authorized* to take, and action in conformity with and carrying out the judgment or order of the Orphans' Court. Here the order, instead of carrying out the proceedings which had resulted in sustaining the will, directed that the widow should only have the *income* from a portion of what she is entitled to under the will, instead of the principal of the whole.

5. The Orphans' Court was without power on an *ex parte* petition to direct that the income of the estate, accruing since the testator's death, be distributed, and thus so to interpret the will, in a matter with respect to which its provisions are obscure, as injuriously to affect the rights of various persons who, besides Mrs. Cropper, were under the will interested in the part of the estate devised for her benefit. The power to interpret a will, especially in case o obscurity, is vested in a court of equity, which is a court of construction, and all parties in interest, executors as well as legatees and remaindermen, are entitled to a hearing.

Such an obscurity exists in the will in this case, in the provision directing the trustee for Mrs. Cropper, upon her death, to pay over the "principal and accumulations" as provided in the will. The term *accumulations* could only have reference to the income of the estate from the death of the testator to the time fixed in the will for the partition of the estate; and therefore the remaindermen, as well as the executrix and trustee under the will, were entitled to have this clause fully construed and settled in a court of equity before any such distribution is made.

Except in the single case provided for in Secs. 7 and 8, Subch. 10, above referred to, the Orphans' Court has no power, without the consent of the executor, to order the executor to pay legacies. In all other cases the only remedy for the recovery of legacies is by suit on the bond of the executor, or by bill in equity.

The section authorizing a distribution in payment of legacies under the direction and control of the Orphans' Court, at the request of the executor, is Sec. 12, Subch. 14. See *Conner* v. *Ogle*, 4 Md. Ch. 450; *Lowe* v. *Lowe*, 6 Md. 353; *State, Use, &c.,* v. *Warren*, 28 Md. 355; *Scott* v. *Fox*, 14 Md. 328.

For cases recognizing and insisting on the limited nature of the jurisdiction conferred by the act of 1798, Ch. 101, see *Bowie* v. *Ghiselin*, 30 Md. 553; *Scott* v. *Burch*, 6 H. & J. 79; *Norment* v. *Brydon*, 44 Md. 112; *Yeaton* v. *Linn*, 5 Pet. 224. For suits on bond of executor to recover legacies, see *State* v. *Wilson*, 38 Md. 343. For example of bill in equity to recover legacies, see *Lark* v. *Lanstead*, 2 Md. Ch. 162; *West* v. *Hall*, 3 H. & J. 223; 9 Gill. 405.

*Mr. J. M. Wilson* and *Mr. Blair Lee* for the appellee.

1. *The error in executors' account.*—By the account of the executors it was apparent that they had applied the income of the estate to the payment of debts and expenses and merged the income in the body of the estate.

To this Mrs. Cropper specifically objected, and it was that

question, out of what funds the debts should be paid, or its equivalent, whether the tenant for life of the residue was not entitled to the income from the death of the testator, that principally occupied the attention of the court below, and the conclusion arrived at may be fairly stated as follows: The right of the life tenant to income, though payable later (after period of administration), vests at the testator's death, and debts are to be paid by deducting from the body of the estate such an amount as, with interest for said period, is the equivalent of said debts, the life tenant's income from the estate being reduced only to the extent of said interest on the amount so deducted from the body of the estate. *Evans* v. *Iglehart*, 6 G. & J. 190.; Hinkley's Test. Law, 100.

It was at one time doubted whether a devise to a person, after payment of debts, was not contingent until the debts were paid ; but it is now well established that such a devise confers an immediately vested interest, the words of apparent postponement being considered only as creating a charge. Jarman on Wills, Vol. 1, p. 793, citing *Barnardiston* v. *Carter*, 1 P. W. 505 ; 3 B. P. C. Toml. 64 ; see *Bagshaw* v. *Spencer*, 1 Ves. 142 ; and some very able opinions stated in 1 Coll. Jur. 214.

It is now well settled that the tenant for life shall have the first year's income, where there is no express direction to accumulate. 2 Perry on Trusts, Art. 550, and cases cited. The intervention of trustees does not affect the rule. *Green* v. *Green*, 3 Stew. (30 N. J. Eq.) 457 ; *Cooke* v. *Meeker*, 36 N. Y. 19 ; *Pollock* v. *Learned*, 102 Mass. 54 ; *Marsh* v. *Taylor*, 43 N. J. Eq. 4 ; *Lovering* v. *Minot*, 9 Cush. 156.

2. *The order appealed from.*—After reserving out of the *corpus* for the debts and stating an account, clearly showing what part of the assets was principal and what was income, the executors were left at liberty by the order to distribute the whole estate should they see fit to do so. In any event, and should they not deem it safe for them to distribute the whole estate, they were directed to distribute such minimum

shares to the widow and " to or for " the daughter as would fall to those individuals, whether the will stands or not.

This was a full and fair compliance with the spirit of Sec. 19, Subch. 15, act 1798, which it is the invariable policy of the Orphans' Court to make operative whenever possible.

The section of the act of 1798 above cited refers doubtless to appeals suspending the powers of the Orphans' Court, and in part does away with their effect *to stay proceedings below.* In the present case there has not at any time been a stay of proceedings in the Orphans' Court. The bonds given in connection with the writs of error being conditioned only for costs, prevent the writs from superseding the judgment giving validity to the will. For this reason the whole matter of the administration of this estate was and is now within the power of the Orphans' Court, and there being no supersedeas, execution follows as of course. *Stafford* v. *Bank,* 17 How. 279 ; *Kitchen* v. *Randolph,* 93 U. S. 87; *Goddard* v. *Ordway,* 94 U. S. 672.

3. *Exercise of constructive powers by Orphans' Court.*—In *Montgomery* v. *Williamson,* 37 Md. 428 (opinion by Alvey, J.), it is clearly intimated that the Orphans' Court might proceed in a matter over which there is a concurrent jurisdiction in a court of equity and grant relief by way of revocation, or the correction of error in account, and that the exercise of said authority was not constructive but within the plain power of the Orphan's Court. See also *Estate of Stratton,* 46 Md. 532. Matters of account and distribution are among the plain duties of the Orphans' Court. The ordinary jurisdiction of a probate court over executors may be safely held to be coextensive with the usual duties of such officers, the latter being briefly stated in *Parsons* v. *Lyman,* 5 Blatchf. 171, as follows: "As executors it was their duty to prove the will, to give the requisite bond, with the aid of appraisers to prepare and file an inventory, to pay the funeral expenses and debts of the deceased and the disbursements necessary in the progress of administration, and to

perform all that the law requires of those who administer on testate estates, including the final settlement of their accounts in the court where all their proceedings were had."

4. *Jurisdiction.*—A trustee to "exonerate himself from liability, must administer according to the trust or under the authority of a competent tribunal." It is after uttering the above that the court in *Conner* v. *Ogle,* 4 Md. Ch. 450, cited by appellants, says that the Orphans' Court has no jurisdiction over trust, meaning undoubtedly that its order would not protect a trustee where he acted under such order but *not* "according to the trust." There can be no question that an executor can be ordered to distribute by the Orphans' Court *according to the trust* or that he can so distribute *in pais.* If the order of the Orphans' Court contravenes a trust there will be a remedy in a court of chancery. In the case at bar there is no contention that the order of distribution is not according to the terms of trust, to the extent of the order. The power of the Orphans' Court to compel distribution in a contested matter (whether the legacy be to a trustee or otherwise) is clearly given by the act of 1798, Subch. 14, Sec. 12. See further as to the jurisdiction of the court, Sec. 1, Subch. 15, act of 1798.

The obligation of the executor to administer *in pais* does not affect, nor is it affected by, the right of a party in interest under a will to bring any particular matter of account or demand, disputed by the executor, such as a partial distribution or the errors in the account in this case, to the attention of the court, nor would the obligation of the executor to administer *in pais* be affected by an order passed in pursuance of such motion, and such accounts, claims or demands, are the very matters this court was created to "examine, hear and decree upon."

As to orders directing distribution, the Orphans' Court can only act in a contested matter and such contest may affect a part of the estate only. This leaves executors with full

powers as to other portions of the estate where there is no contest. The duty of the executors to distribute *in pais* is not an unreasonable doctrine, nor is it unreasonable that only contested matters should be decided by the court, and though this may result in what the appellants style "piece-meal" distribution, this is infinitely better than that, because there is a contest as to a part, or someone objects to something, an entire estate should be tied up pending the settlement of such contest or objection not applicable to the whole. The advantage any other rule would give the executor is manifest, as by raising objections here and there, he could prevent a settlement of his accounts indefinitely.

The point raised by the appellants with respect to the provision of the will as to "accumulations" is readily settled by reference to the case of *Gibbons* v. *Mahon,* 136 U. S. 549, a case very like to this.

The attention of the court is called to the consideration that the executor and executrix are largely interested personally as legatees in having the writs of error dismissed. Their refusal to distribute under the order appealed from may be explained by their being concerned for their future as legatees, not as executors, for that order avoids all possible future injury to an interest, and the distribution under it would be permanent.

5. *When executors may distribute.*—It is the duty of executors and administrators to pay creditors within thirteen months from the date of their letters, and any surplus then remaining should be divided among the distributees, according to law. After the lapse of that time, a distributee may sue the bond of the executor for his share of the surplus. Hinkley Test. Law, Sec 1229; *Coward* v. *Worrell,* 7 G. & J. 475; *Mann* v. *State,* 3 H. & G. 237; act of 1798, Subch. 10, Secs. 6, 9.

Mr. Justice Shepard delivered the opinion of the Court:

The errors assigned may be considered together as presenting the two general propositions: 1. That the special

term for the Orphans' Court had no jurisdiction whatever to make the order for partial distribution. 2. That the income of the estate must be regarded as an accumulation, so far as Mrs. Cropper's right is concerned, from the time of the death of the testator until the payment of all debts and the final distribution.

1. It is contended that the statute of Maryland, 1798, Chap. 101, which governs proceedings for the administration of estates in the Orphans' Court of this District, confers no express power upon that court to make the order appealed from, and that the exercise of all implied or constructive power is expressly prohibited by Subch. 15, Sec. 10 of said act, which reads as follows: "The said Orphans' Court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly given by this act or some other law." This provision is too plain to admit of construction; it means what it says. It therefore remains to be seen if the power exercised by the court below in making the order appealed from is conferred by any other provision of the said act. Subch. 8, Sec. 1, requires all executors and administrators to render accounts within fifteen months after the date of letters, and authorizes extension of time by the court. Subch. 15, Sec. 1, provides among other things, that the Orphans' Court shall exist " for the purpose of taking the probate of wills, granting letters testamentary and of administration, *directing the conduct and settling the accounts of executors and administrators, securing the rights of legatees,* superintending the distribution of the estates of intestates, securing the rights of orphans and legatees, and administering justice in all matters relative to the affairs of deceased persons according to law."

Subch. 10, Sec. 6 : " When it shall appear by the first or other account of an executor or administrator with the will annexed, that all the claims against or debts of the deceased, which have been known by or notified to the said executor or administrator, have been discharged, or retained for, or

settled, it shall be his duty to deliver up the estate in his hands to those entitled; provided, that his duty and power with respect to future assets shall not cease."

Section 7 of the same subchapter provides that where the executor or administrator has in hand assets to a great amount, and there is no reason to apprehend that they will be nearly exhausted in payment of debts, those entitled after payment of debts, if "in want of subsistence or greatly straitened in their circumstances," may upon application to the court have an order for part payment, upon giving bond with security to make return if needed for payment of debts. Section 8 extends the same privilege to legatees. Section 9 provides for the revocation of the letters of executors and administrators in event of failure to return accounts when so directed.

Subch. 14, Sec. 12: "Any executor or administrator shall be entitled to appoint a meeting of creditors, or of persons entitled to distributive shares or legacies, or a residue, on some day by the court approved, and passage of claims, payment or distribution may be there made, under the court's direction and control."

Subch. 15, Sec. 12: "The Orphans' Court shall have full power, authority and jurisdiction to examine, hear and decree upon all accounts, claims, and demands, existing between wards and their guardians, and between legatees, or persons entitled to any distributable part of an intestate's estate, and executors and administrators, and may enforce obedience to, and execution of, their decrees, in the same ample manner as a court of chancery may."

Sections 16, 17, and 18, provide for proceedings in matters of contest between parties interested and for appeals therefrom. Section 19 reads thus: "An appeal from the Orphans' Court shall not stay any proceedings which may with propriety be carried on before the appeal is decided, providing the said Orphans' Court can provide for conforming to the decision of the court above, whether the said decision may eventually be for or against the appellant."

The foregoing sections of chapters of the act of 1798 seem to be all that have any bearing or shed any light upon the questions presented in this case.

After careful consideration, we are of the opinion that the court below, sitting for Orphans' Court business, had jurisdiction of the matter in controversy.

As appears from the foregoing recital of the provisions of the statute, it had the express power, fully conferred, to require the executors to render an account, to examine and settle the same, and to secure the rights of the legatees.

Subchapter 14, Section 12, authorizes the executors to appoint a day for settlement, when the estate is ready therefor, and payment, distribution, etc., may then be made under order of the court. The executors did not avail themselves of this privilege prior to the proceedings of the appellee, because, no doubt, they did not consider the estate ready for distribution, and preferred to wait until the writ of error taken to review the probate of the will might be disposed of. Having the power to order the account to be filed, and to settle the same, the court had the express power also, under Subchapter 10, Section 6, if it should appear that all debts had been paid, to order the executors to perform the duty thereby imposed, viz., "to deliver up and distribute the residue."

Provision for contests that may grow out of the matters within the jurisdiction is made in the sections of Subchapter 15, above referred to. Section 12 thereof, which has application only in matters of contest (*Conner* v. *Ogle*, 4 Md. Ch. 450), confers express power "*to examine, hear and determine all accounts, claims and demands existing between legatees or distributees and executors and administrators*," with the power "to enforce obedience to, and execution of, their decrees in the same ample manner as a court of chancery may." The contest in this case was begun by the filing of the appellee's petition to compel an account and partial distribution, followed by the exceptions to the account as rendered, and resulted in the decree for distribution in part, which is the subject of this appeal.

2. It is further contended that, notwithstanding the Orphans' Court may have had jurisdiction of the general subject matter of accounts and distribution of the estate, its power did not extend to a decree for part distribution. The first point of the contention is that the power to order part distribution is expressly limited by Subchapter 10, Section 7, to those legatees or distributees who may petition the court, showing themselves to be "in want of subsistence or greatly straitened in their circumstances." This section is evidently intended to provide for cases where perfectly solvent, or apparently solvent, estates may be very long delayed in settlement on account of claims, litigation, etc., whereby great hardship might be caused to needy legatees and distributees. It is true that the only other provisions concerning distribution are found in Section 6 of the same subchapter, and in Subchapter 14, Section 12, and these contemplate complete and final settlement and distribution, after all known debts "have been discharged, retained for, or settled." Under Section 6, it has been said that the Orphans' Court is not required to ascertain the "individuals entitled to legacies, distributive shares and residues;" that the executor "administers the estate *in pais;*" and that if he doubts as to who are entitled to distribution, legacy or residue, and in what proportions, he may procure action of the court, which would protect him under the power conferred by Subchapter 14, Section 12, aforesaid. *Conner* v. *Ogle,* 4 Md. Ch. 450.

This estate was not in the condition contemplated in Section 7, and the application of the appellee had no reference to a part distribution under it. It was not only a great estate, unquestionably solvent, but the account of the executors, upon which the court acted, showed that all claims against it had been discharged; at least, it was not made to appear that there were any outstanding unpaid debts or demands. Nothing stood in the way of distribution, under the provisions of Section 6, unless it was the proceeding pending in the Supreme Court of the United States to review the

decree admitting the will and codicil to probate. The executors did not offer to distribute *in pais*; nor did they seek to avail themselves of the provisions of Subchapter 14, Section 12, until after the institution of appellee's proceeding herein. At the same time, however, their motion for an order " directing the distribution of the entire estate in pursuance of the terms of the will," is a distinct admission that the estate is ready for final distribution among those entitled thereto. Whether this motion was well taken is not before us. Possibly it ought to have been granted. The writ of error did not operate as a supersedeas. The bond was for costs only. *Stafford* v. *Union Bank*, 17 How. 275; *Kitchen* v. *Randolph*, 93 U. S. 86; *Goddard* v. *Ordway*, 94 U. S. 672.

The executors took charge of the estate after the probate, and have since proceeded to administer the estate. The appellee has recognized them and their administration by her proceedings for account and distribution in part, notwithstanding her writ of error. Under these circumstances, the Orphans' Court had the power to order distribution to be made.

In acting upon the petition of appellee and decreeing part distribution, the court below was evidently governed by the provisions of Subchapter 15, Section 19. Whether this section operates as a limitation upon the power to proceed with the administration and distribution of the estate as provided in the will, notwithstanding the failure to supersede in connection with the writ of error, it is not necessary to decide. The appellee regarded it as a limitation, and made her application under that view. No other legatee or distributee has made objection to the action of the court. The error, if any, is not to the prejudice of the executors, so far as we can see, and they have no apparent cause of complaint. *Lancaster* v. *Collins*, 115 U. S. 222.

The order of distribution is clearly intended to be so limited, in conformity with that section, that, no matter how the writ of error may terminate or result, the appellee cannot receive

anything more than she would be clearly entitled to, either as legatee under the will, or as heir at law or next of kin, in case of intestacy. Other legatees are amply protected in the event that the will be finally established, and the executors, and persons entitled in case of intestacy, can suffer no possible injury should the probate be set aside and the will declared void.

3. The court did not err in holding that the appellee was entitled to the income of her share of the personal estate given her by the will. The will expressly provides that her trustee shall apply the " rents, issues, and profits thereof" to her " use [paying the same over to her] for life." One of the executors, James L. McLane, is the designated trustee.

Where the will does not express an intention to the contrary, the rule is now general that the legatee of the life interest is entitled to receive the income or interest from the time of the testator's death. *Evans* v. *Iglehart*, 6 Gill & J. 190; *Cooke* v. *Meeker*, 36 N. Y. 15, 19; *Pollock* v. *Learned*, 102 Mass. 49; *Augerstein* v. *Martin*, 1 T. & R. 232; 2 Roper, Legacies, 1320 *et seq.*; Perry on Trusts, Secs. 550, 551. The subsequent direction to the trustee, upon her death, to pay over " the principal thereof, with all the accumulations," to certain other persons named, does not show an intention to the contrary.

If any special significance is to be attached to the word " accumulations," it must have reference to probable increases in the stocks, of which the estate largely consisted, through additions thereto made from time to time through the act of the several corporations represented. Such increase of capital stock has been held to constitute an accretion to the body of the fund, and not a part of the dividends or income for the benefit of the life tenant. *Gibbons* v. *Mahon*, 136 U. S. 549.

4. We must hold that the objections to the decree as rendered, which are embodied in the sixth, seventh, and eighth errors in order of assignment, are well taken. The decree

is too general and uncertain in its terms. The whole matter of ascertaining the income, as well as the amounts to be retained for contingencies, is left generally to the executors, with no precise rule for their guidance. They have a right to demand certainty and precision in order that they may be duly protected by the decree on all sides. If this could not be attained, because of the state of the account then before the court, the order for distribution ought to have been deferred to the coming in of the new account ordered.

In the next place, the decree requires the payment to be made " to or for the heirs at law." So far as the appellee is concerned, she is entitled to receive no part of the income directly from the executors. The will directs the share to which her interest attaches to be given in trust to James L. McLane, who is charged with paying the income to her during her life. The Orphans' Court has no jurisdiction over him as trustee, though he be an executor of the estate also. It cannot compel him to the performance of his trust or control him therein. Hence, all that the Orphans' Court could lawfully do in the premises would be to order the income for appellee's benefit, that is, upon her legacy, to be paid over to the said trustee. If upon receipt thereof, he deny her right to it, she can hold him to account in a proceeding before another tribunal. This disposes, too, for the purposes of this case, of the question whether the rights of the remaindermen, after the determination of the life estate, have been, or can be, concluded by the decree below, as regards the question whether the income of the fund from the time of the testator's death shall be deemed to be for the benefit of the life tenant, as income, or of the remaindermen, as accumulations to the principal. If the trustee apprehend any difficulty on this account, he has ample means for his complete protection.

For the defects in the decree herein pointed out it must be reversed, and the cause remanded that the decree may be modified and reformed in the aforesaid particulars. As

the original record brought up by the appellants sufficiently discloses all the proceedings below that are necessary to the disposition of the case in this court, the costs of the *certiorari*, including transcript fees and charge for printing the same, must be taxed against the appellee, under the rules of this court. All other costs of appeal will be taxed against the appellants as executors, to be paid by them and charged against the said estate. It is so ordered.