**In re ESTATE of William L. CLARK, Deceased.**

**Jennifer CLARK, an adult, Appellant,**

**v.**

**John R. CLARK and Girard Trust Bank. No. 72–1428.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 9, 1973.

Decided Dec. 17, 1973.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from an order of the District Court, sitting in Probate, dismissing objections to an account filed by the executors of the estate of William L. Clark, pursuant to 20 D.C.Code § 1701 et seq. A beneficiary under Clark's will objects to the executors' statement of expenses and compensation for services on the probate assets of the estate, on the ground that the statement did not include all claims for compensation for services on probate assets which the executors would eventually make. We affirm.

## I. STATEMENT OF FACTS

The testator, William L. Clark, died on November 6, 1968. His only heirs were his daughters, Jennifer Clark and Lucy P. Clark. His will, dated August 21, 1968, named as executors his brother, John Clark, a resident of Pennsylvania, and the Girard Trust Bank in Philadelphia. At the time of his death, the testator was domiciled in the District of Columbia. The will was admitted to probate and Letters Testamentary were issued by the District Court to the executors, on January 13, 1969.

On August 21, 1968, the decedent also created an *inter vivos* trust in Pennsylvania, for the benefit of the decedent during his lifetime, and then his daughters during their lifetimes. The trust instrument named the Girard Bank as trustee, and provided that John Clark should become an additional trustee at the decedent's death. The trust instrument was executed at Philadelphia and provided that all questions of its validity or of the administration of the trust should be governed by Pennsylvania law. Article 13 [1] authorized the trustee to

E. Ladd Thurston, Washington, D. C., for appellant.

John S. Hoff, Washington, D. C., with whom Lloyd Symington and Michael F. Curtin, Washington, D. C., was on the brief for appellees.

---

1. Article 13 provided:
   The Trustee shall have the power, but not the duty, to make such payments from the principal of this trust as it may think desirable to facilitate the settlement of my estate, and in the exercise of this power the trustee may pay, in whole or in part, any or all of (i) my debts, (ii) the ex-

make payments from the principal of the trust for "administration expenses in connection with my estate, even though they do not relate to property becoming subject to this deed." Under the will, the probate assets in decedent's estate, valued at $216,367.95 by the Register of Wills, were to "pour over" into the Pennsylvania trust.

On February 10, 1971, John Clark wrote the two beneficiaries of the arrangements concerning compensation for services rendered in connection with estate settlement. This letter advised that $13,400 were claimed in executor's commissions, and $14,500 in attorney's fees, to be paid from both probate assets and the principal of the Pennsylvania trust. The following table summarizes the sources and recipients of compensation as disclosed in the February 10 letter:

| Recipient | From Probate Assets | From Trust Assets | Totals |
|---|---|---|---|
| Girard (co-executor's commission) | $ 5,800 | $ 4,100 | $ 9,900 |
| John Clark (co-executor's commission) | 3,500 | –0– | 3,500 |
| Washington counsel (legal fees) | 4,000 | 3,000 | 7,000 |
| Philadelphia counsel | –0– | 7,500 | 7,500 |
| TOTALS | $13,300 | $14,600 | $27,900 |

On October 8, 1971, the executors filed with the District Court, for its approval, a claim for compensation for services rendered in connection with probate assets, as follows:

| | |
|---|---|
| Executors' commissions | $9,300 |
| Attorneys' fees | 4,000 |
| | $13,300 |

———◆———

Jennifer Clark[2] opposed the court's approval of the executors' claim, asserting that there was no assurance that the claim represented all compensation for services on probate assets which the executors might ultimately claim; that the compensation which executors intended later to obtain from the trust might represent, in part, compensation for services rendered to probate assets, which would eventually become part of the trust principal; and that since anticipated payments by the executors as trustees were not included in the claim, the District Court could not determine whether the executors' total compensation for service to the probate assets was reasonable under District of Columbia law. In addition, there was objection to the payment of attorneys' fees to

penses of my funeral and burial, and (iii) death taxes and administration expenses in connection with my estate, even though they do not relate to property becoming subject to this deed; provided that no property which would be exempt from federal estate tax if not payable to my executors or administrators shall be used to make any payments under this article.

Neither my executors or administrators nor any beneficiary of my estate shall be required to reimburse the trustee for any such expenditures.

2. While objections were originally made on behalf of Lucy P. Clark by her mother and "natural guardian," Sylvia Clark, it now appears that Lucy Clark has consented to the account and withdrawn from the appeal.

the Philadelphia law firm in which the executor John Clark is a partner, since under District of Columbia rulings it is improper for an attorney to pay his own law firm for legal services rendered to an estate from which he receives commission as an executor.

The executors asserted that the jurisdiction of the District Court was limited to supervision of compensation for services rendered to probate assets and paid from the probate assets themselves.

The District Court, in an oral ruling, dismissed the objections. The Court stated that "the trust estate in Philadelphia is no concern of ours" and further that

I would assume that the Philadelphia Court, in passing upon the propriety of the claimed commissions and attorneys' fees in that jurisdiction, will become well aware of what is being done down here.

(JA 156–57).

## II. JURISDICTION AND CONCERN OF THE DISTRICT COURT

The jurisdiction of the District Court sitting in Probate (Probate Court) extends to probate assets—those to which title passes under the will. An *inter vivos* trust in which the beneficial interest passes pursuant to the trust instrument is not a probate asset, *see* In re Scott's Estate, 96 F.Supp. 290 (D.D.C.1951), and the Probate Court lacks jurisdiction over questions as to the trustee's performance of trust obligations, McLane v. Cropper, 5 App.D.C. 276, 298 (1895), appeal dismissed 163 U.S. 682, 16 S.Ct. 1200, 41 L.Ed. 316 (1896), even if the Probate Court has personal jurisdiction over the trustee because he is also an executor.[3]

In the circumstances of this case, we think the Probate Court acted correctly, that it had no jurisdiction over John Clark and the Girard Bank in their capacity as trustees, and that it

properly allowed what are palpably fair and reasonable executors' commissions and attorneys' fees for services rendered in regard to probate assets, because the individuals involved were planning a separate application to the Pennsylvania court having jurisdiction over the trust.

The arguments before us though compressed in the time constraints of the summary docket, have trailed broadly into fields we do not enter. The executors and attorneys contend that the probate court is solely limited to a consideration of "probate assets." The beneficiary responds that the court must attend to the reality of "pour over" trusts as part of the entire scheme for disposition of the entire estate left by the decedent, that such trusts, especially with provisions like Article 13, permit a disbursement, outside the view of the probate court, of payments made for services rendered to probate assets, which are in contravention of the legislature's contemplation of judicial scrutiny over executor's commissions. They assert that the overriding policy that must be applied is that set forth in 20 D.C.Code § 1705, which provides that executors' commissions shall not exceed 10% of value of the property in the executor's account and limiting executors' expenses and attorneys' fees to amounts "which the court considers proper."

We do not think it is necessary to erect a jurisdictional Chinese wall in order to affirm the order before us. We do not need to say, for example, that the Probate Court never has a legitimate concern with an executor's compensation from a source other than probate assets. It may be, for example, that a private agreement between the executor and the testator, or subsequent to death between the executor and an heir, providing additional compensation for probate services to be paid outside probate assets, might offend the policy of limitation embodied in § 20–1705. It may be that the Probate Court would have jurisdic-

---

3. Estate of Celia A. Martin, No. 23,743, Aug. 1, 1944, reported in 1 Mersch, Probate Prac-

tice in the District of Columbia (2d ed. 1952) § 121 n. 99.

tion through its control over the fiduciary to declare the side agreement invalid, as an "overreaching" that was rooted in the executor relationship. In any event, the Probate Court might proceed by disallowing, in light of the agreement, some or all of the compensation claimed by the executor before the court. Similarly, we need not determine that the probate court may never have a legitimate concern with payments made to executors, out of trust assets, for services to probate assets.

The same considerations may apply to the rules evolved in this jurisdiction against payment to an executor for legal services, as a corollary of the principle that an executor cannot seek a personal profit out of his trust.[4] It may be that a probate court may take into account payments made to an executor who has designated himself to render legal services for non-probate assets, at least for the purpose of reducing commissions payable out of probate assets.

But as a matter of judicial administration, the District of Columbia probate court was entitled to proceed with expeditious handling of the probate assets without courting indefinite delay because there might be future related questions in the handling of the Pennsylvania trust. There was no objection to the amount of either the executors' commissions or the attorneys' fees claimed before the Probate Court, and no issue of separate payment to an executor, out of probate assets, for legal services he or his firm has rendered. No compensation from the Pennsylvania trust has been formally claimed. Girard Bank and John Clark must ultimately account to the Pennsylvania courts for any payments made from the trust, and the beneficiaries can compel an accounting at any time under Pennsylvania law.[5] The District Court contemplated that objections, if any, to further compensa-

tion executors might seek from the Pennsylvania trust, would be presented in the Pennsylvania courts. This disposition comports with principles of sound judicial administration and comity.

We assume that the Pennsylvania courts will take notice of the compensation which trustees have been allowed in this jurisdiction, for services rendered to probate assets. We assume also that the Pennsylvania courts will not countenance double payments.[6]

■■■ There lurks in this case another issue, whether any payments may properly be made out of the pour-over trust for services to the probate assets not made the subject of a presentation to the Probate Court. The executors and their counsel concede that contemplated payments from the trust of approximately $1400 may represent compensation for services to probate assets, but they argue that the expenses are modest in amount, that they cover services not foreseen at the time the probate account was originally presented to the court, and that an allocation of services between probate and nonprobate assets is, in any case, difficult and rather arbitrary, as well as unnecessary in view of the arrangements of the pour-over trust. The beneficiary, on the other hand, asserts that virtually all of the commissions and fees contemplated for payment out of the trust are, realistically, compensation for probate asset services, since the nonprobate assets are insurance policies and the like, which could not possibly generate the fees claimed.

We identify these questions only to make clear that we are not deciding them, and that in the context of this case we do not consider ourselves the appropriate court to decide them, taking into account sound principles of judicial administration and comity.

Decedent executed his will in Pennsylvania, appointed Pennsylvania domicil-

---

4. *E. g.*, In re Hallenbeck's Estate, 122 F. Supp. 212 (D.D.C.1954).

5. 20 Pa.Statutes § 320.981 (Purdon, 1952); recodified as 20 P.Stat. § 7181 (1972).

6. See Powell v. Ogden, 108 U.S.App.D.C. 6, 278 F.2d 451 (1960).

iaries as executors, and provided that compensation of the corporate executor should be in accordance with its standard schedule of fees. It is for a Pennsylvania court to assess the proper significance of that,[7] and to consider also the scope of services rendered to trust assets, including both those assets that were formerly probate assets (which would embrace the accounting rendered in probate court) and those that were never probate assets, the purposes of the trust and the trust principles applicable to its administration.

Affirmed.

Bazelon, Chief Judge, concurred in part and dissented in part and assigned written reasons.

---

7. Compare § 316 Restatement, Second, Conflict of Laws (1972) with Moore, Estate Ad-ministration and the Conflict of Laws, 35 Va.L.Rev. 316, 331 (1949).