**Annette G. GRABOIS, as Committee of the Person and Property of Marian Grosner, an Insane Person, Appellant,**

v.

**Frances K. GROSNER and American Security and Trust Company, Appellees.**

**No. 19499.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 2, 1965.

Decided Feb. 8, 1966.

Petition for Rehearing before the Division and for Rehearing En Banc Denied March 31, 1966.

———◆———

Mr. Robert D. Wallick, Washington, D. C., with whom Messrs. Earle W. Wallick and John F. Murray, Washington, D. C., were on the brief, for appellant.

Mr. Roberts B. Owen, Washington, D. C., for appellees.

Before EDGERTON and PRETTYMAN, Senior Circuit Judges, and FAHY, Circuit Judge.

PRETTYMAN, Senior Circuit Judge:

This is a will case. The committee for an incompetent person, beneficiary under a testamentary trust, filed a civil action seeking a judgment against the trustees. The District Court granted summary judgment for the defendant trustees. This appeal followed.

Our appellant (the committee) and the beneficiary are sisters. Their father by will, after providing for his wife, created a trust and directed the trustee to divide the trust property into shares, of which one share was set apart for his daughter Annette, one share for his daughter Marian, and, the will said, one share for the then-surviving issue collectively of either of the daughters who might then be dead. The testator treated the shares of the two sisters separately, the share of Annette in Article Sixth (A) (1) and the share of Marian in Article Sixth (A) (2). But the two paragraphs are identical, and thus the directions to the trustees, although separately stated, were identical as to the two sisters. The daughter Marian had been in a mental institution for about two years prior to the execution of the will; she entered the institution in 1946, the will was executed in 1948, and the father died in 1952.

The problem arises because of certain provisions in Article Sixth (A) (2), relating to the daughter Marian, and provisions in a subsequent article (Article Eleventh), which is a paragraph applicable generally to the trusts created by the will. The pertinent sentence in Article Sixth is:

"In the case of the part or share so set apart for the benefit of my daughter, MARIAN GROSNER, if she shall survive me, my Trustees shall hold, manage, control, sell, invest and reinvest the same and collect the income therefrom, and after making all proper deductions for taxes, Federal, State or Municipal, upon said trust share, or the income therefrom, and after deducting all other proper and necessary administrative expenses, shall pay over the net income arising therefrom to my said daughter for the term of her natural life."

The pertinent part of Article Eleventh is:

"I hereby authorize and empower my Trustees, in the exercise of their absolute and uncontrolled discretion, to apply to the use of any beneficiary hereunder the whole or any part of the income or principal of the separate trust share set apart for such beneficiary as my said Trustees may deem to be proper and necessary in the event of any serious illness, or other calamity, or because of the necessity of such beneficiary to have additional funds for her living expenses. My said Trustees, in their uncontrolled discretion, are authorized to determine the necessity or emergency for using the income or principal, or any part thereof, and their decision shall be final and conclusive upon all beneficiaries hereunder."

After the testator died, the trustees assumed their duties, and through the year 1957 they applied directly for Marian's use and benefit such portions of the net income of the trust as they deemed necessary for her support and maintenance. They accumulated the excess of the trust income over the amounts thus applied. A dispute arose between the trustees and Marian's sister, Annette, concerning certain expenditures, and she initiated proceedings in the Supreme Court of New York, which led to her appointment as committee of the person and property of her sister, Marian. Upon her appointment the trustees paid over to her the entire income accumulated in their hands. Thereafter they paid over to her virtually all of the current income of the trust quarterly, until June, 1961. At the latter date, and continuing to the present time, the trustees refused either to pay any of the trust income to the committee or to apply any

of it to the benefit of the beneficiary, Marian.

In the complaint the committee prayed that the court declare the duties of the trustees and her rights under the testamentary trust, and that the court enter judgment against the trustees for such amounts of the net income as were not either paid for the maintenance and support of the beneficiary, Marian, or distributed to the committee. The question is whether the trustees may accumulate the income of this trust or whether they are required either to devote it to the maintenance and support of Marian or distribute it to the committee.

The trustees' position is built upon the premise that Article Sixth is inoperative and that the alternative, Article Eleventh, gives them absolute discretion in respect to the disposition of the income allocable to the daughter Marian. We think this premise cannot be sustained.

Several considerations impel toward the conclusion thus stated. The trustees say Article Sixth is inoperative because it directs that the income be paid to Marian and she is incompetent. But the testator knew when he wrote the article that this daughter was incompetent. She had been in a mental hospital for two years before the will was executed, and her father lived for four years after that. The trustees would have us assume that the father nevertheless wrote and signed a provision which he knew at the time would be null. Rather we think it quite likely he had in mind that, when he had gone and his will took effect, and when he could no longer himself care for Marian as he had been doing, a committee would necessarily be appointed for her. She had income other than from this trust. As long as he lived, he personally paid her bills and attended to her needs; she needed no committee. The end of his life created the need. So, when he directed that the income be paid to Marian, already then incompetent, he could have meant her or her legal representative. Thus read, the two articles, Sixth and Eleventh, can both be given effect. And this is the directive of judicial authorities. The law is that if two sections of a will can be read together, reasonably, they must be so read.[1]

The two articles (Sixth and Eleventh) in his will can be read together. Thus considered they provide that the trustees shall decide in their unfettered judgment the amounts of the current income which shall be applied to Marian's necessities, and shall then pay over the balance to her committee. This is a rational reading. Her father may well have wanted the principal of this estate to be in permanent professional hands and the invasion of that corpus to be in those same hands, but wanted the current attention to her needs, out of the income, to be in the hands of an individual, probably someone close to her, appointed by and constantly under the control of a court accustomed to these matters. Such a reading fits closely the general intent obvious on the face of the will.

Moreover in this connection we cannot overlook the form and content of Article Sixth. It was specific in its reference to Marian, naming her, and it was emphatic in its direction, saying "shall" pay over. Can we assume that an able business man, with able legal assistance, thus carefully prepared what he knew as he wrote to be a nullity? Absent any compelling necessity to do so, we think such an assumption cannot be made. Still further along the same line are the form and content of Article Eleventh. Every draftsman of wills will recognize this as one of the provisions usually put in wills, especially when there are to be corporate trustees with experience in the complexities and attendant liabilities in such matters, giving the trustees power to invade principal and to utilize income

---

1. Ellery v. Washington Loan & Trust Co., 72 App.D.C. 293, 298 & n. 17, 113 F.2d 525, 600 (1940); Pace v. Bradley, 84 U.S.App.D.C. 212, 214, 171 F.2d 350, 352 (1948).

otherwise untouchable, in the event of serious illness or the necessities of living. This provision is not ordinarily viewed as a conveyance of absolute discretion over the whole of trust income.

■ Furthermore the trustee's construction would cause, or at least permit, the accumulation of all the income of this trust for Marian's entire lifetime. Strong and clear language would be necessary to permit that result. This father obviously meant to care for the current lifetime needs of his afflicted daughter. The will contains no mention, or even suggestion, of accumulation. The law does not favor the implication of a directive to accumulate income. All considerations are adverse to accumulation.

Another impressive consideration in the same direction is that the trustees made distributions for the first eight or nine years of the trust existence. For the first five-plus years they applied directly to Marian's use and benefit such of the income as they deemed advisable and accumulated the balance. Thereafter for three-plus years, when the committee had been appointed, they paid virtually all the income over to her. Their present practice of accumulating all the income did not begin until 1961, some nine years after the testator died and the trust took effect. The initial and long-continued interpretation by the trustees of their own powers is a significant factor in the present problem.

■ In summary, the two constructions presented to us are: (1) The trustees say Article Eleventh, despite the contrary specific language of Article Sixth, would permit them in their absolute discretion to accumulate, in their own hands, all the income arising in this trust; (2) the appellant committee says the father meant that the trustees perform such functions as an impersonal professional body can best perform, that is, protection of the corpus and a general sense of proportion and necessity in the light of the amounts of the annual income, and that the application of the excess income to Marian's needs be done

by one specifically, individually and personally devoted to that matter, that is to say, a committee appointed by and reporting to a court. We think the latter is the clear intent and meaning of the will. We think it is possible and reasonable. We approve it.

The trustees' insistence upon limiting Article Sixth to a distribution to Marian herself in person, and refusal to recognize that for all legal purposes the duly appointed committee acts in Marian's behalf precisely as she herself would do, seems to us singularly unimpressive. The trustees also insist that the testator must be presumed to have thought (expected, they say) that his incompetent daughter, Marian, would never have a committee. This contention also strikes us as singularly unimpressive. He had provided funds for her well-being in a number of ways (at least two) other than this trust. He established an *inter vivos* trust, the income of which was payable to Marian, and he bought insurance annuities payable to her. Somebody had to care for her affairs. Surely a competent business man, which this testator obviously was, would contemplate that after he had gone a guardian or committee would be appointed.

■ The trustees argue as though the powers of the trustees were the important feature of this estate, to be protected against all other interests operating in respect to it. This tone pervades the whole of their arguments. We do not agree. The interests of the beneficiaries are the prime considerations. The intention of the testator is the guide. The powers and benefits of the trustees are altogether subsidiary and give way always to any impulsion from either of the other two interests. Thus, when the trustees deplore the result of disturbing or impinging upon the discretion of the trustees, we are not impressed.

■ Appellant insists that these trustees be removed. We think this is uncalled for. The record contains no suggestion of maladministration. If it should develop that by an undue persistence in support of their own prerogatives the

trustees expend an excess amount from the trust income, the matter can be brought to the attention of the court.

The summary judgment will be set aside and the cause remanded for the preparation and entry of a decree in accordance with the views expressed in this opinion.

So ordered.