Jane W. HOLBROOK and First National Bank of Arizona, Co-executors of the Estate of William Wraith, Jr., Deceased, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 76–3122.

United States Court of Appeals, Ninth Circuit.

June 1, 1978.

Stephen A. Thomas of Bilby, Shoenhair, Warnock & Dolph, Tucson, Ariz., for plaintiffs-appellants.

Gilbert E. Andrews, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

The co-executors of the Estate of William Wraith, Jr. sued for a refund of federal estate taxes, claiming the Estate is entitled to a credit against tax under Section 2013 of the Internal Revenue Code of 1954, 26 U.S.C. § 2013,[1] which provides for a credit based on the value of property transferred to the decedent within ten years before his or her death, in a transfer which was itself subject to estate tax. Here the property transferred was a life income interest under a testamentary trust, the value of which is determined as of the transferor's death.

However, the trustees were vested with administrative powers so broad that the decedent's interest cannot be valued as of the transferor's death using recognized valuation principles. Accordingly, we affirm the summary judgment of the court below disallowing the credit.

## I.

The material facts are not in dispute. The decedent's mother, Erma M. Wraith, died on June 6, 1969. Her will created a trust naming the decedent and his two children as trustees. The trustees were directed to distribute all income from the trust to the decedent and his wife during their lives. The trustees were also empowered to pay to decedent and his wife whatever portion of the principal was reasonably necessary for their support, maintenance, and welfare, if in the opinion of the trustees their other resources were insufficient for that purpose. Upon the death of the survivor of decedent and his wife, the trustees were to distribute the principal and accumulated income of the trust to the decedent's then living descendants. The terms of the trust also gave the trustees certain discretionary powers of administration, including the power to invest in unproductive assets. The pertinent provisions of the will provide as follows:

"IX

In the administration of my estate and of any trust, my executor, executrix and trustees are vested with the following powers in addition to those now or hereafter inferred by law affecting my estate or any trust herein established:

A. To purchase or otherwise acquire and to retain any and all (including the original property coming into their hands under this instrument) stocks, bonds,

---

* Honorable William H. Orrick, United States District Judge, Northern District of California, sitting by designation.

1. Section 2013 provides in pertinent part as follows:

"(a) General rule.—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a 'transferor') who died within 10 years before, or within 2 years after, the decedent's death. * * *"

notes or other securities or any variety of real or personal property, including stocks or interests in investment trusts and common trust funds, as they may deem advisable, whether or not such investments be of the character permissible for investments by fiduciaries or be unsecured, unproductive, underproductive, overproductive or of a wasting nature. Investments need not be diversified and may be made or retained with a view to a possible increase in value. The executor, executrix or trustees may at any time render liquid my estate or the trust estates in whole or in part, and hold cash or readily marketable securities of little or no yield for such period as they may deem advisable.

\*   \*   \*   \*   \*   \*

K. The enumeration herein of certain powers of my executor, executrix or trustees shall not limit their general powers and the exercise of any power or discretion by any of them shall be absolute power or discretion by any of them and shall not be subject to inquiry by any of the beneficiaries of my estate or any trust created herein, and such exercise shall be binding upon all such beneficiaries."

The government contends that these powers rendered the decedent's life income interest under the trust incapable of valuation as of the transferor's death, and hence ineligible for a tax credit under Section 2013. We agree.

## II.

Section 2013 of the Internal Revenue Code of 1954 provides that a decedent's estate is entitled to a tax credit where the decedent has received property in a transfer from a person who died within ten years before the decedent, which transfer was itself subject to estate tax. The section was enacted to "prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period." S.Rep. No. 1622, 83d Cong., 2d Sess. 121, *reprinted in* [1954] 3 U.S.Code Cong. & Admin.News, pp. 4629, 4755.

The credit applies to any beneficial interest in property received by the transferee. I.R.C. § 2013(e). Thus, a life estate held by the decedent-transferee may qualify for the credit, even though the life estate will not be included in his estate, and therefore cannot itself be the subject of double taxation. *See* Treas.Reg. §§ 20.2013–1(a) and 20.2013–5(a) (1958). The apparent rationale for allowing a credit for terminable interests is that the terminable interest may produce income that might be taxable in the life tenant's estate. Another possible rationale is that income derived from the life estate might enable the decedent to conserve other assets which would then be subject to estate tax. *Estate of Sparling*, 552 F.2d 1340, 1343 n. 8 (9th Cir. 1977).

The credit is based on the value at which the transferred property was included in the transferor's gross estate for federal estate tax purposes. I.R.C. § 2013(d). Where the property transferred is a life income interest, as in the instant case, the Treasury Regulations provide that "the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles (see especially §§ 20.2031–7 and 20.2031–10)." Treas.Reg. § 20.2013–4. Sections 20.2031–7 and 20.2031–10 of the Regulations contain the actuarial tables used to compute the present value of life estates.

There appears to be no case in which a Section 2013 credit has been disallowed on the ground that the powers granted the trustee rendered the interest in question incapable of valuation based on recognized valuation principles. However, a quite similar question has frequently arisen in the context of two other provisions of the Internal Revenue Code of 1954, Section 2055,[2]

---

**2.** 26 U.S.C. § 2055. *Gardiner v. United States*, 458 F.2d 1265 (9th Cir. 1972); *Rand v. United States*, 445 F.2d 1166 (2d Cir. 1971); *Greer v. United States*, 448 F.2d 937 (4th Cir. 1971); *Florida Bank v. United States*, 443 F.2d 467 (5th Cir. 1971); *Miami Beach First National Bank v. United States*, 443 F.2d 475 (5th Cir. 1971); *First National Bank v. United States*, 443 F.2d 480 (5th Cir. 1971); and *Estate of Stewart v. Commissioner*, 436 F.2d 1281 (3d Cir. 1971).

which authorizes an estate tax deduction for the value of a charitable remainder held in trust to the extent its value is presently ascertainable, and Section 2503,[3] which allows a gift tax exclusion for a gift in trust provided the value of the donor's retained interest is susceptible of valuation. The principles evolved in these cases are equally applicable here. Rev.Rul. 70–292, 1970–1 C.B. 187; *Martinez v. Commissioner*, 67 T.C. 60, 65–66 (1976).

In general, the tax benefit has been permitted where the trustee's powers are so circumscribed either by the trust instrument or state law that the value of the interest in question is "accurately calculable." *Merchants National Bank v. Commissioner*, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35 (1943). Appellants concede that the trust instrument here does not supply a standard which so controls the trustee's discretion that the value of decedent's life estate is susceptible of valuation as of the transferor's death. However, appellants insist that the law of Arizona does supply such a standard.

■ In essence, appellants argue that were the trustees to manage the trust fund so as to produce little or no income, such conduct would constitute a remediable abuse of discretion under Arizona law.[4] In order to determine whether a decision by the trustees to invest in unproductive assets would constitute an abuse of discretion, it is necessary to ascertain the intent of the settlor, for it is this intent "which is the controlling consideration in determining the rights as between the life income benefici-

aries and the remaindermen * * *." *In re Estate of Gardiner*, 5 Ariz.App. 239, 241, 425 P.2d 427, 429 (1967). "The intent is to be ascertained from the contents within the four corners of the instrument, *including the general plan or scheme thereof,* and when necessary or appropriate, the circumstances under which the will was made." *Id.,* 5 Ariz.App. at 240–41, 425 P.2d at 428–29 (emphasis added). "Determination of the testator's intent is to be made upon a consideration of the instrument *as a whole* * * *." *In re Trust Estate of Wills*, 8 Ariz.App. 591, 594, 448 P.2d 435, 438 (1968) (emphasis added).

■ The last will and testament of Erma M. Wraith creates a simple trust which provides that any income from the trust be paid to decedent and his wife for their lives. To imply from this provision that the trustees were under an absolute duty to produce income for the life income beneficiaries is to ignore the general plan of the instrument, which specifically authorized the trustees, in their absolute discretion, to invest in unproductive and underproductive assets, to retain investments with a view to possible increase in value, to render the estate liquid in whole or in part, and to hold cash or readily marketable securities of little or no yield for as long as they deem advisable. Construed as a whole, it is apparent that the transferor intended to vest the trustees with broad discretion so that they could flexibly manage the trust fund in order to produce a great deal of, or very little, income. Bearing in mind that the appellants bear the burden of establishing

3. 26 U.S.C. § 2503. *Martinez v. Commissioner,* 67 T.C. 60 (1976); *Van Den Wymelenberg v. United States,* 397 F.2d 443 (7th Cir. 1968). *Cf. Hamilton v. United States,* 553 F.2d 1216, 1218–19 (9th Cir. 1977).

4. Appellants rely on *In re Trust Estate of Wills,* 8 Ariz.App. 591, 448 P.2d 435 (1968); *Bulla v. Valley National Bank,* 82 Ariz. 84, 308 P.2d 932 (1957); and *In re Schuster's Estate,* 35 Ariz. 457, 281 P. 38 (1929). These are the same cases relied on by the taxpayers in *Gardiner v. United States, supra,* n. 2, a Section 2055 case wherein the government prevailed on its contention that the powers granted the trustee prevented the value of the charitable remainder

from being "presently ascertainable." The court stated:

"These cases are not particularly helpful. They merely state the general proposition that in exercising the powers conferred upon him by the trust instrument a trustee must protect the interest of all beneficiaries, act in good faith, and exercise due care and diligence. None of the cases applies this general axiom to override a specific grant of authority comparable to that involved here." *Id.* at 1267.

the estate's entitlement to a tax credit, *Rockwell v. Commissioner*, 512 F.2d 882 (9th Cir. 1975), it cannot be said that a decision by the trustees to invest in assets producing little or no income would constitute a remediable abuse of discretion under Arizona law. It follows that the interest of the decedent was not susceptible of valuation as of the transferor's death based on recognized valuation principles, and hence cannot be the basis for a tax credit under Section 2013.[5]

AFFIRMED.

---

**5.** This result appears unfair and is certainly at odds with the modern trend toward vesting trustees with broad discretion in managing trust assets. Designing an accommodation between this desirable administrative flexibility and the goal of avoiding double taxation of the same property within a brief period is, however, a legislative, not a judicial problem.