Herbert O. SCHOENHERR, Plaintiff,

v.

UNITED STATES of America, Defendant.

Herbert O. SCHOENHERR, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 81–C–853, 81–C–854.

United States District Court, E.D. Wisconsin.

July 1, 1983.

---

. Fox, Carpenter, O'Neill & Shannon by John H. Schaller, Milwaukee, Wis., for plaintiff.

Mark E. Nebergall, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

These two cases were jointly tried to the court on May 12, 1983. This opinion constitutes my findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

In both cases the plaintiff seeks a refund of taxes which he contends were wrongfully collected from him by the Internal Revenue Service. He asserts that this court has jurisdiction under 28 U.S.C. § 1346(a)(1), which gives federal district courts original jurisdiction over:

"Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

In both cases it is uncontested that the plaintiff paid taxes assessed against a corporation, that he was not in fact personally liable for the taxes, and that the tax assessment was proper as to the corporation. The only disputed question concerns this court's jurisdiction under 28 U.S.C. § 1346(a)(1).

■ It is clear that only a "taxpayer" may bring a suit for refund under § 1346(a)(1). *E.g., Collins v. United States,* 532 F.2d 1344, 1347–48 n. 2 (Ct.Cl.1976). In my decision of April 28, 1983, denying the defendant's motions for summary judgment, I held that the plaintiff could establish his "taxpayer" status and the existence of jurisdiction under § 1346(a)(1) by proving: (1) that he believed the taxes he was paying were taxes he owed personally; (2) that his belief in his personal liability was reasonable under all the circumstances; and (3) that he paid the taxes with no intention that the payment be a donation for the benefit of a third party. *See David v. United States,* 551 F.Supp. 850 (C.D.Cal. 1982).

■ In case no. 81–C–853, I believe the plaintiff has met his burden of establishing these three elements. According to the evidence adduced at trial, Mr. Schoenherr was appointed receiver in an action filed on November 8, 1979, by five restaurants against several of their corporate officers. On November 16, 1979, the court action was dismissed pursuant to a settlement agreement, but Mr. Schoenherr did not learn of the dismissal and of his relief from his appointment as receiver until November 20 or 21, 1979.

In addition to his position as receiver, Mr. Schoenherr had another connection with the restaurants, in that he had purchased the equipment of one of the restaurants and had leased it back. The monthly payments on this lease were to be roughly $2600, but no payments were ever actually made.

On November 16, 1979, the IRS arranged a meeting to demand payment of delinquent taxes owed by the five restaurants for which Mr. Schoenherr had earlier been appointed receiver. What happened at this meeting was the subject of considerable dispute. In general, I found Mr. Schoenherr's testimony concerning the meeting to be the more credible. Only one of the IRS agents involved in the matter testified at the trial. He contradicted himself on a number of points, and his memory of what had been said was hazy. In contrast, Mr. Schoenherr's testimony was clear and consistent. He was very definite concerning what occurred, and his version of events was corroborated by other testimony. The following account of the meeting reflects

my judgment as to the credibility of the witnesses who testified concerning it.

Late in the morning of November 16, 1979, Mr. Schoenherr received a telephone call from an IRS agent, Frederick Debelack, who informed him that his presence was required at a meeting that afternoon in his role as receiver for the five restaurants. Mr. Debelack either stated or implied that Mr. Schoenherr could be subject to criminal penalties if he did not come. Mr. Schoenherr went to the meeting out of concern for the consequences if he did not go. He did not have counsel present at the meeting.

Those who attended the meeting included Mr. Schoenherr, Mr. Debelack, another IRS agent, Marvin Hilke, and a number of other people considered by the IRS to have an interest in the restaurants. The agents informed those present that they had authority to close the restaurants and would do so immediately if the delinquent taxes were not paid. In a separate consultation, Mr. Hilke told Mr. Schoenherr that he was personally responsible for the taxes as receiver of the restaurants, and that if the taxes were not paid, the assets of the restaurants would be immediately seized, along with Mr. Schoenherr's equipment that was being leased back to one of the restaurants. At the time Mr. Hilke made this statement, he knew about the settlement and dismissal of the lawsuit in which Mr. Schoenherr had been appointed receiver, but he did not mention this to Mr. Schoenherr.

Mr. Schoenherr happened to have a check with him at the meeting, which he signed over to the IRS in part payment of the taxes of the two restaurants located in Milwaukee (the Milwaukee restaurants). He agreed with Mr. Hilke that he would pay the rest of those restaurants' liability the following Monday morning. The next Monday, Mr. Schoenherr went to Mr. Hilke's office and made the remaining payment.

There was some confusion in the testimony as to whether the payments made by Mr. Schoenherr were intended as a loan to the corporation or its owners and as to whether two of the owners signed an IOU and gave it to Mr. Schoenherr at the meeting. Ac-

cording to Mr. Schoenherr, he refused to make a loan to the corporation but stated that he would hold the two individual owners responsible for the payment he was making, since he did not believe he should have to bear the ultimate burden of the payment. I find Mr. Schoenherr to be credible on this point; if an IOU was in fact given to him by the two owners, I find that it was on the basis stated by Mr. Schoenherr.

At the start of the meeting on November 16, 1979, the IRS agents did not actually have authority to close the restaurants, although such authority had been applied for. By the end of the meeting they knew such authority had not been given, but they did not inform anyone present of this fact. Mr. Hilke also neglected to inform Mr. Schoenherr of this fact when he met with him again on the Monday after the meeting was held. During the November 16, 1979, meeting, the IRS agents were also aware, and also did not mention, that three of the five restaurants (not including the two Milwaukee restaurants) had filed bankruptcy petitions.

Returning to the three-part test laid out in my April 28, 1983, decision, I have no question that the first element was met, i.e., that Mr. Schoenherr believed he was paying a personal tax liability when he paid the taxes that had previously been assessed against the Milwaukee restaurants. I also find that his belief was reasonable. Although he had had some prior business experience and was not completely naive, Mr. Schoenherr was not a sophisticated businessman with a background in tax matters who could have been expected to know or suspect that the IRS agents' statements about his personal liability were incorrect. While it would have been wise for Mr. Schoenherr to have consulted an attorney before paying the taxes, I do not believe it was unreasonable for him to fail to do so under the circumstances. He was under considerable pressure and had little time in which to decide what to do. Furthermore, he had only been appointed as receiver of the restaurants a week before. The restau-

rants had no funds to hire an attorney, and Mr. Schoenherr had been unwilling to use his personal funds to retain counsel for advice concerning his duties as receiver.

Finally, it is my opinion that Mr. Schoenherr did not intend the payments he made to be a donation for the benefit of the restaurants. I find credible his testimony that he thought he was paying a personal tax liability that nevertheless had only come into being because of the restaurants' delinquency; on that basis he felt entitled to reimbursement from the restaurants' owners (which he has never received).

Mr. Schoenherr's motivation in making the payments was not to protect the business of the restaurants. The restaurants had not been making the lease payments he was entitled to in any case, and were unlikely to do so even if he kept them operational by making the tax payments. Mr. Schoenherr's interest in the leased equipment was, at least in his mind, an interest in personal property of his own, not an interest in the business operations of the restaurants that would prompt him to try to keep them open.

■ In summary, in case no. 81–C–853, I find that the plaintiff has established that this court has jurisdiction under 28 U.S.C. § 1346(a)(1). Since it is uncontested that he did not owe the taxes toward which the two payments he made were credited, he is entitled to a refund of those payments.

■ I also find that the plaintiff has sustained his burden of proof in case no. 81–C–854. This case involved a tax assessment against the Milwaukee Does, a women's basketball team. According to documents submitted at trial, Mr. Schoenherr acquired a half interest in the stock of the Does on July 31, 1979. *See* exhibit 1. In an agreement dated September 19, 1979, the plaintiff purchased the remaining 50% of the stock to become sole owner of the Does. *See* exhibit 4. Although Mr. Schoenherr later found out that the previous owner did not have the right to sell the stock in question, *see* exhibit 10, Mr. Schoenherr became

aware of that fact only after the events at issue in this lawsuit.

According to Mr. Schoenherr's testimony, he was approached in August, 1979, by Warren Bishop, an IRS agent, concerning the overdue employee withholding and Social Security taxes of the Does. Mr. Schoenherr testified that Mr. Bishop told him he was personally responsible for these taxes. At Mr. Schoenherr's request, Mr. Bishop sent him a letter confirming this assertion, which states: "Any past and present subsequent owners/officers/employees/ Etc of the Milwaukee Does Inc. May be personally liable for the Trust fund taxes." Exhibit 3. According to Mr. Schoenherr, Mr. Bishop told him that he was, in fact, personally liable for the taxes assessed against the Does and that the IRS could confiscate his personal assets if he did not pay.

According to Mr. Schoenherr's testimony, he subsequently spoke to another IRS agent, Marvin Hilke, who also told him he was personally responsible for the taxes and that his personal assets would be levied upon if he did not make payment. Mr. Schoenherr claimed that he believed the IRS agents; he himself had worked for a governmental agency for many years and assumed that the statements of these government employees were reliable. On the strength of what the agents told him, Mr. Schoenherr said, he signed an installment agreement on October 4, 1979, to pay part of the Does' taxes. *See* exhibit 5. The agreement lists the Milwaukee Does as the taxpayer; Mr. Schoenherr's title is given as "president and treasurer." According to Mr. Schoenherr's testimony, he was not at that time president of the Does, although he may have been treasurer. He stated that he used the "president and treasurer" titles because Mr. Hilke told him an officer of the corporation had to sign the agreement.

Mr. Schoenherr made two payments under the installment agreement, one when it was signed and another about a month later. *See* exhibits 6 and 7. Each time he was given a receipt made out to the Milwaukee Does. *Id.* He stated at trial that

each time he asked for a receipt made out to him personally, but was told it would have to be made out to the Does. The rationale allegedly given him for this procedure was that the taxes had originally been incurred by the corporation, even though Mr. Schoenherr was personally responsible for them as an officer of the corporation.

When Mr. Schoenherr did not make the next payment on the installment agreement, he received a letter addressed to the "Milwaukee Does" that threatened "levy on your income or salary, or ... seizure of your property" if the payment was not promptly made. Exhibit 8. More than a year later he received a letter proposing a penalty assessment against him for the Does' taxes. Exhibit 9.

Mr. Schoenherr acknowledged that he had a very substantial financial interest in the Milwaukee Does. He asserted, however, that he did not enter into the installment agreement to pay the taxes to protect this financial interest, but rather because he was worried that his personal property would be levied against or seized if he did not pay. He stated that the Does had few assets to protect, and that under their agreement with the league to which they belonged, the assets would have reverted to the ownership of the league if they had been levied upon.

Mr. Schoenherr admitted that the Does had not been financially successful, that he lost a great deal of money as a result of his investment in the team, and that he did pay some of the Does' obligations with his personal funds. However, he insisted that with respect to the taxes in question here, he always believed it was a personal obligation he was paying, and that his reason for doing so was to avoid confiscation of his personal assets. Mr. Schoenherr stated that he did not consult an attorney about the matter of the Does' taxes, believing that he could rely on the IRS agents' representations of his liability.

The only testimony that contradicted that of Mr. Schoenherr was the testimony of IRS agent Hilke. Mr. Hilke stated that his meetings with Mr. Schoenherr were solely for the purpose of collecting the Does' taxes, and that no determination had been made at that time as to anyone's personal liability under the 100% penalty provisions of 26 U.S.C. § 6672.

Based on my estimation of the credibility of the witnesses, I find that the plaintiff's version of how he came to pay some of the trust fund taxes that had been assessed against the Milwaukee Does should be generally accepted as true. Thus, I believe he was told by the IRS agents that he was personally liable for the taxes and that his personal assets would or could be levied on if he did not pay. I also believe that Mr. Schoenherr trusted the agents' representations and believed he was personally liable for the taxes.

This finding satisfies the first element of the three-part test I laid out in my earlier decision in this case. However, Mr. Schoenherr also has the burden of establishing that his belief in his personal liability was reasonable and that he did not intend to make a donation for the benefit of the corporate taxpayer.

Having accepted Mr. Schoenherr's representations as to what he was told by the revenue agents, I also find that it was reasonable for him to believe that he was personally responsible for payment of the Does' taxes and that he was paying off this personal liability when he entered the installment agreement with the IRS. The principal argument against this conclusion is Mr. Schoenherr's failure to consult an attorney or accountant concerning the IRS agents' representations as to his personal liability. Again, while it would have been prudent to take such a step, I do not believe it was *unreasonable* for Mr. Schoenherr to rely on the agents' statements.

I am also of the opinion that Mr. Schoenherr did not intend his payment of the Does' taxes to be a donation for the corporation's benefit. As he acknowledged at trial, he did have a substantial financial interest in the Does and thus had some motivation to "donate" the Does' taxes in the hopes of keeping the corporation afloat. However, this motivation was lessened by

the fact that the Does' assets apparently would have reverted to the basketball league if an attempt had been made to seize them. Furthermore, Mr. Schoenherr stated, and I find his statement to be credible, that his main concern in paying the taxes was fear that his personal assets would be levied on.

 I conclude that Mr. Schoenherr has established that this court has jurisdiction of case no. 81–C–854 under 28 U.S.C. § 1346(a)(1). It is uncontested that he did not owe the taxes toward which his two payments under the installment agreement were credited, and therefore he is entitled to a refund of the payments.

In his complaints, the plaintiff asks that the court award reasonable attorney's fees, interest, and costs in these actions. Award of attorney's fees and costs against the United States is governed by 28 U.S.C. § 2412. Section 2412(a) permits the court to award costs against the United States, and I find that such recovery should be allowed here.

With respect to attorney's fees, § 2412(d)(1)(A) mandates the award of such fees unless the position of the government is "substantially justified" or special circumstances make an award unjust. In this case, I believe the government's position was substantially justified. The legal issues concerning interpretation of 28 U.S.C. § 1346(a)(1) under the circumstances of this case are not settled. The government's position that this court did not have jurisdiction of these actions has sufficient support in the case law that that position must be considered "substantially justified."

Even if payment of attorney's fees is not mandated by § 2412(d)(1)(A), the court may award such fees pursuant to § 2412(b) in accordance with the same common law and statutory criteria that apply to the award of attorney's fees against any other party. Applying these criteria, I do not believe an award of attorney's fees is called for in these cases.

The plaintiff has also asked that interest be awarded. An award of prejudgment interest will be made pursuant to 28 U.S.C. § 2411. *See Fletcher v. United States,* 674 F.2d 1308, 1312 (9th Cir.1982).

Therefore, IT IS ORDERED that judgment be entered in case no. 81–C–853 for the plaintiff and against the defendant for the sum of $17,794.28, plus costs as provided in 28 U.S.C. § 2412(a) and interest as provided in 28 U.S.C. § 2411.

IT IS ALSO ORDERED that judgment be entered in case no. 81–C–854 for the plaintiff and against the defendant for the sum of $18,000, plus costs as provided in 28 U.S.C. § 2412(a) and interest as provided in 28 U.S.C. § 2411.