**Claire W. Glendening BORYAN, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ. A. 87–1332A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 7, 1988.

Michael P. Logan, John D. Grad & Associates, P.C., Alexandria, Va., for plaintiffs.

Paula M. Potoczak, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

In this estate tax refund suit, the central issue is whether the Internal Revenue Service (IRS) properly disallowed a Section 2013 credit in connection with the tax return for the estate of Jean Marston Glendening. *See* 26 U.S.C. § 2013. Plaintiffs are Mrs. Glendening's sole beneficiaries. They contend the IRS erred in denying the credit. Indeed, they claim the refund should be even larger than the amount originally disallowed because Mrs. Glendening's executor relied on an IRS form that contained a printing error. The government counters first by asserting that plaintiffs lack standing to sue for a refund. Further, the government insists that the

denial of the Section 2013 credit was correct because the value of the asset in question, a life interest in a trust, cannot be ascertained with the requisite accuracy. Finally, the government argues that the claim based on the IRS printing error was not raised at the administrative level and is neither within the statute of limitations, nor properly pleaded.

The essential, dispositive facts are not in dispute.[1] The matter is therefore appropriately before the Court on cross motions for summary judgment.[2] For the reasons stated here, the Court finds that Mrs. Glendening's beneficiaries are proper plaintiffs, that Mrs. Glendening's life estate is capable of valuation using recognized valuation techniques and that plaintiffs may not sue for an overpayment of taxes due to miscalculation of the credit. These holdings, however, do not end this matter. The Court must retain jurisdiction to ascertain the amount of the refund to which plaintiffs are entitled.

### Facts

Mrs. Glendening died on July 23, 1982. Her husband, Alan S. Glendening, predeceased her by less than ten years. His estate consisted, *inter alia*, of an *inter vivos* trust with Riggs National Bank (Riggs) as trustee. On his death, this trust was split between a marital deduction trust and a residual trust.[3] Mrs. Glendening withdrew her marital share and placed it in her own *inter vivos* trust at American Security Bank (ASB). The residual trust ("the Trust") is the source of the disputed tax credit and hence the focus of this suit. Mrs. Glendening had a life estate in the Trust which, in Articles Seven and Eight, provided as follows:

#### Article Seven

From the Grantor's date of death, the Trustee shall pay to or apply for the

---

1. The parties stipulated the pertinent facts and documents. *See* Stipulation of Facts, dated April 22, 1988; Stipulation of Facts, dated June 14, 1988; Stipulated Documents, dated April 22, 1988; Supplemental Stipulated Documents, dated June 14, 1988.

2. Plaintiffs also filed, but did not pursue, motions dated April 7, 1988 for judgment on the

pleadings, for enforcement of an alleged settlement agreement and for a default judgment.

3. The husband's estate also included real estate which passed by survivorship to Mrs. Glendening, and insurance proceeds which also passed directly to her. The will was not probated because all the assets passed outside the will.

benefit of the Grantor's wife the net income from the Residual Trust. Any net income not disbursed shall be added to principal.

### Article Eight

On the death of the Grantor's wife, the Trustee shall add to the Residual Trust any portion of the Marital Deduction Trust not disposed of by the Grantor's wife. As long as any Grantor's child under age twenty-five (25) is living, the Trustee shall pay to or apply for the benefit of all the Grantor's children, to-wit: [the plaintiffs] including those age twenty-five (25) or older as much of the net income and principal of the Residual Trust as the Trustee, in the Trustee's discretion deems necessary for their proper support, health, education and maintenance. The Trustee may pay more to or for some of the said children than others, if the Trustee deems this necessary or appropriate in light of the circumstances, the size of the Trust Estate, and the needs of the various children.

Mary Cook Hackman, Mrs. Glendening's attorney, drafted the Trust. Early in the life of the Trust, Riggs, as trustee, raised one of the matters now in issue by asking Hackman whether under Article Seven, income was to be paid at the discretion of the trustee. Hackman responded that income payments were not intended to be discretionary; the second sentence of the article was intended only for the purpose of disposing of any undistributed income in the event of Mrs. Glendening's death. In other words, according to Hackman, Article Seven's second sentence was to have no application during Mrs. Glendening's life.

Hackman was also appointed executor of Mrs. Glendening's estate. The estate was composed of her *inter vivos* trust with ASB as trustee, some real estate, personalty and cash. All but the *inter vivos* trust passed through probate. On April 22, 1983, Hackman filed a federal tax return for Mrs. Glendening's estate showing estate taxes due of $145,443.00.[4] In computing the taxes due, Hackman claimed a Section 2013 tax credit[5] for Mrs. Glendening's life interest in the Trust. An IRS audit followed. As a result, the IRS disallowed the credit on the ground that the value of the Trust was not definitely ascertainable. The IRS construed Article Seven of the Trust to confer on the trustee the discretion to add income to the principal rather than to pay it all to the beneficiary. It also later construed Article Eight as granting the Trustee authority to invade the Trust principal for the benefit of Mrs. Glendening's children during Mrs. Glendening's life.[6] Given these constructions of the Trust, the IRS concluded that Mrs. Glendening's life interest in the Trust was not subject to valuation with the requisite certainty. The IRS accordingly disallowed $35,562, the amount of credit claimed in

---

4. Mrs. Glendening's probate estate had insufficient cash to pay the estate taxes. Accordingly, ASB used Trust assets to pay the lion's share ($144,273) of the taxes on behalf of the plaintiffs, who were then the sole beneficiaries of the Trust. The remaining $1,190 was paid from the estate checking account.

5. In essence, Section 2013 of the Internal Revenue Code, 26 U.S.C. § 2013, grants an estate a credit for the estate tax paid by the estate of a prior decedent relating to property transferred by the prior decedent to the present decedent. The section was enacted to "prevent the diminution of an estate by the imposition of successive taxes on the same property." S.Rep. No. 1622, 83rd Cong., 2d Sess. 121, 122, *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621, 4755; *see also* H.R.Rep. No. 1337, 83rd Cong., 2d Sess. 89, 90, 1954 U.S.Code Cong. & Admin.News 4017,

4116. To qualify for the credit, three basic requirements must be met: (i) the property must have been transferred to the present decedent by the prior decedent, (ii) the prior decedent must have died within 10 years of the death of the present decedent, and (iii) the prior decedent's estate must have been subject to federal estate taxes. 26 U.S.C. § 2013(a). The allowable credit is limited to the lesser of (i) the amount of estate tax attributable to the transferred property in the prior decedent's estate, or (ii) the amount of estate tax attributable to the transferred property in the present decedent's estate. 26 U.S.C. § 2013(b), (c); 26 C.F.R. § 20.2013.1(b)(1), (2).

6. The original disallowance was based solely on the IRS' construction of Article Seven. Additional arguments emerged after commencement of the litigation.

reliance on Section 2013.[7] Plaintiffs decided not to contest this matter in the United States Tax Court, but rather to pay the assessment and sue for a refund in United States District Court. *See* 26 U.S.C. § 6213(a); 28 U.S.C. § 1346(a)(1). Accordingly, Riggs paid the assessment on September 19, 1985 at the request of plaintiffs, who were then the sole beneficiaries of the Trust. Thereafter, on April 16, 1987, plaintiffs filed a refund claim for the $35,562 plus $10,005 in interest and "such greater amounts as may be legally recoverable." Complaint, at ¶ V(13). The IRS acknowledged receipt of the refund claim, but took no action on it. After the passage of six months, therefore, plaintiffs instituted this action.

Prior to the institution of this suit, several events occurred bearing on plaintiffs' standing to maintain the action. First, all the assets of Mrs. Glendening's probate estate were distributed to plaintiffs pursuant to the will and a compromise agreement filed and recorded in the Arlington County Circuit Court. Hackman's final accounting was thereafter approved and the estate declared closed by the Commissioner of Accounts on March 30, 1987. Second, all the assets of Mrs. Glendening's *inter vivos* trust with ASB were distributed to plaintiffs and that trust closed. Finally, Riggs has distributed one-half of the Trust assets to plaintiffs. The distribution of the remaining one-half must await the thirtieth birthday of the youngest plaintiff.

The final set of facts pertinent to the issues now before the Court did not come to light until after the filing of the refund suit. In the course of discussions and negotiations with the government, counsel for plaintiffs had occasion to review in detail the April, 1983 return for Mrs. Glendening's estate. As a result, he discovered an error traceable to a misprint in the IRS Schedule Q of Form 706 used by Hackman in preparing and filing the estate return.

The government concedes the form contained a printing error. Specifically, line 1 of Schedule Q of Form 706 read as follows:

Transferee's tax as apportioned (from worksheet, (line 7 ÷ line 8) × line 34 for each column).

The reference to "line 34" was a mistake; the correct reference should have been to "line 35." This printing error was discovered by the IRS in September, 1982 and corrected in an announcement issued on November 1, 1982. *See* Notice 643, Correction to Form 706, 1982–44 Int.Rev.Bull. 15 (Nov. 1, 1982) (Announcement 82–141).[8] Additionally, the IRS placed a copy of the notice in each Form 706 at distribution centers nationwide. Why Ms. Hackman did not see this announcement in April, 1983 is not disclosed. In any event, the return was not amended, and the issue was neither raised at the administrative level nor in the refund claim. Indeed, not until after the refund suit was filed did plaintiffs learn that the preparer had made a computational error because she failed to see the correction notice.

As noted, the printing error was contained in the June, 1982 revision of Form 706, the revision Hackman used in connection with filing the return in April, 1983. As a result, the Section 2013 credit she computed was $35,562. Had she correctly computed the credit by using the amount on line 35 as the multiplier, the prior transfer credit would have been $104,350. Plaintiffs now seek this amount as a refund rather than the $35,562 originally claimed.

These facts present three issues. The first is whether plaintiffs have standing to sue for a refund. The second issue is whether the powers granted to the trustee are such as to render the Trust incapable of valuation by recognized valuation principles. If so, no Section 2013 credit is appropriate. On the other hand, if the trust is susceptible to valuation by recognized prin-

---

7. The total amount disallowed by the IRS as a result of the audit was $39,510.44. Of this amount, $35,562.00 stemmed from the denial of the 26 U.S.C. § 2013 credit. The remaining amount, not contested here, resulted from an increase in the valuation of certain other assets.

8. Form 706 was not permanently corrected until January, 1984 when this and other changes were made to the form as a result of the Tax Equity and Fiscal Responsibility Act of 1982.

ciples, then a third question is presented. It is whether the Court should order a refund for the credit amount originally claimed ($35,562) or for the much larger amount ($104,350) attributable to the executor's erroneous use of an IRS form.

## Analysis

### I. Standing

The government first attacked plaintiffs' standing, claiming that only Mrs. Glendening's estate, as the taxpayer, could challenge the assessment. Specifically, the government asserted that refund claims could be filed only by the taxpayer. 26 U.S.C. § 7422(a); *see also* 26 U.S.C. §§ 6402(a), 6511(a). The Code defines "taxpayer" as "any person subject to any internal revenue tax." 26 U.S.C. 7701(a)(14). Plaintiffs, it was argued, did not fit this description.[9] Instead, it was the government's original view that Riggs was the proper claimant because it was Riggs that paid the assessment and was empowered to do so under the Trust. In its latest pleading, however, the government has withdrawn its standing objection. Nonetheless, the Court must address this issue to ensure that the proper parties are before the Court and that any refund ordered is paid to the proper parties.

■■■ The government's original standing position cannot be sustained as it now apparently recognizes in belatedly withdrawing the objection. Riggs is not an appropriate plaintiff here. While it was empowered to pay the tax, it acted as a volunteer in doing so. And it is well settled that a volunteer, paying the taxes of another, has no valid claim for a refund. *See McGraw–Hill, Inc. v. United States,* 623 F.2d 700, 703, 224 Ct.Cl. 354 (1980). In any event, Riggs filed no refund claim, a statutory prerequisite to a tax refund suit. *See* 26 U.S.C. § 7422(a).[10] Thus, as the government now acknowledges, Riggs is not a necessary or appropriate party plaintiff here. *See Factory Storage Corp. v. United States,* 611 F.Supp. 433, 435 (E.D. N.C.1985). Nor is the executor of the estate an appropriate plaintiff. She, too, filed no refund claim and, in any event, the estate has been closed and the executor discharged.

■■■ *Luce v. United States,* 444 F.Supp. 347 (W.D.Mo.1977), initially cited by the government in opposition to standing, in fact helps confirm plaintiffs' standing here. *Luce* held that after the closing of an estate, the residual legatee became the proper party to file a tax refund case. *Id.* at 348–49. That is precisely what has occurred here. Mrs. Glendening's estate was closed prior to the filing of the refund claim and plaintiffs are the residual beneficiaries of that estate. Plaintiffs are, moreover, "person[s] subject to any internal revenue tax." 26 U.S.C. § 7701(a)(14). As recipients and owners of all the assets in Mrs. Glendening's taxable estate, they are potentially subject to the estate tax lien created under 28 U.S.C. § 6324(a), a lien automatically imposed for ten years on any property subject to estate tax. Similarly, plaintiffs satisfy the code's definition as they are potentially subject to a tax under the Virginia estate tax apportionment law. Va.Code § 64.1–161. Indeed, in the compromise agreement filed in Arlington County Circuit Court, plaintiffs explicitly assumed responsibility for such taxes.[11]

---

9. Cited in support were *Bruce v. United States,* 759 F.2d 755, 758–59 (9th Cir.1985), *aff'g,* 84–1 U.S.Tax Cas. (CCH) ¶ 9517 (N.D.Cal.1984) [available on WESTLAW, 1984 WL 696] (refund suit dismissed when the court found that the attorney for the taxpayer/plaintiff paid the tax; therefore, plaintiff was not the person entitled to the refund); *Estate of Fink v. United States,* 653 F.Supp. 368, 373–74 (E.D.Mich.1986), *aff'd without opinion,* 842 F.2d 331 (6th Cir.1988); *Williams v. United States,* 11 Cl.Ct. 189 (1986) (in the case of a corporation, the corporation and not a corporate officer is the proper party), *aff'd without opinion,* 818 F.2d 877 (Fed.Cir.

1987); *Schoenherr v. United States,* 566 F.Supp. 1365, 1367 (E.D.Wis.1983).

10. The time for making such a claim has now expired. 26 U.S.C. § 6511(a).

11. It is well settled that federal tax liability can be created under state apportionment statutes as well as by contract. *Commissioner v. Stern,* 357 U.S. 39, 44–45, 78 S.Ct. 1047, 1050–1051, 2 L.Ed. 2d 1126 (1958); *Mayors v. Commissioner,* 785 F.2d 757, 759–60 (9th Cir.1986); *American Equitable Assurance Co. of New York v. Helvering,* 68 F.2d 46, 48 (2d Cir.1933).

Yet another reason for upholding plaintiffs' right to sue here is that it is consistent with an important purpose of the standing doctrine in the tax context: ensuring that refunds are not paid to parties not entitled to them. Failure to enforce standing requirements could result in the necessity for multiple payments. In the instant case, however, plaintiffs, as residual beneficiaries of Mrs. Glendening's estate, are plainly the only parties entitled to receive any refund. This confirms that they have the requisite standing to maintain this suit.

## II. Does the Credit Apply to the Trust?

■ The IRS' disallowance of the credit rests on the settled principle that a credit is permissible only where the property interest involved is susceptible to valuation in accordance with recognized valuation principles. For life estates, IRS regulations provide that "the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles." 26 C.F.R. § 20.2013–4. Life estates incapable of valuation in this fashion are not eligible for the Section 2013 credit.[12] See, e.g., Holbrook v. United States, 575 F.2d 1288, 1291–92 (9th Cir. 1978); American Nat'l Bank & Trust Co. v. United States, 73–1 U.S. Tax Cas. (CCH) ¶ 12,899, at 81,198 (E.D.Tenn.1972) [available on WESTLAW, 1972 WL 480]; Estate of Pollack v. Commissioner, 77 T.C. 1296, 1304 (1981). The Fourth Circuit adopted this principle in Estate of Lion v. Commissioner, 438 F.2d 56, 59–60 (4th Cir.1971), cert. denied, 404 U.S. 870, 92 S.Ct. 52, 30 L.Ed.2d 114 (1971). See also Mercantile–Safe Deposit & Trust Co. v. United States, 368 F.Supp. 743, 745–46 (D.Md.1974). The reason for this rule is that under the statutory scheme, the amount of credit which may be taken hinges on a determination as

to the value of the transferred property. See 26 C.F.R. §§ 20.2013–2(a), 20.2013–3(2); Estate of Lion, 438 F.2d 56, 59.

But it is not the principle itself that is in dispute here; rather, it is the application of the principle to the instant facts. In the government's view, Articles Seven and Eight of the Trust make it a discretionary trust and hence not susceptible to valuation using recognized valuation techniques. Pertinent here, according to the government, is IRS Revenue Ruling 67–53, which states:

Where a trustee possesses the power, in his absolute and uncontrolled discretion, to pay out net income to the income beneficiary of a trust or to accumulate such income, the beneficiary's interest cannot be valued according to recognized valuation principles as of the date of the transferor's death. Therefore, notwithstanding the fact that such income was actually paid to the decedent-transferee, the credit for tax on prior transfers under Section 2013 of the Code is not allowable with respect to such an interest.

Rev.Rul. 67–53, 1967–1 C.B. 265.

■ The question presented here, therefore, is whether the Trust conferred on the Trustee such discretionary powers as to render it incapable of valuation. Resolution of this question involves construction of the Trust, a task that must be undertaken, by the Trust's terms, pursuant to the law of the District of Columbia. In federal tax cases local law, not federal law, governs the construction of pertinent testamentary documents, including trusts. See Estate of Mittleman v. Commissioner, 522 F.2d 132, 137 (D.C.Cir.1975). Accordingly, it is through the lens of District of Colum-

---

**12.** As the government observed, this case has an interesting, if insignificant, twist. Section 2013 is intended to prevent successive taxation of the same asset when it passes through the estates within ten years. Yet in this instance, the asset in question, Mrs. Glendening's interest in the Trust, does not pass through a second estate. Her interest is only a life estate. Even so, however, Mrs. Glendening's life interest in the Trust still qualifies for the Section 2013 credit because "property" subject to that section is

defined as any beneficial interest in property, including life estates, annuities, estates for a term of years and future interests. 26 U.S.C. § 2013(e); 26 C.F.R. § 20.2013–5(a). In this respect, as the government noted, the code may be seen to be generous to the second estate. The suggested rationale for the code's treatment of a life estate is that other estate assets would have been depleted in the absence of the life estate. Holbrook v. United States, 575 F.2d 1288, 1290 (9th Cir.1978).

bia law that the government's arguments must be examined.

### (A) Discretion to Accumulate Income.

First, the government argues that Article Seven renders the Trust incapable of valuation because it allows the trustee the discretion to accumulate income. This argument fails; it runs counter to the settled trust construction principle that a trustee's power to accumulate income should not be implied absent "strong and clear language" to that effect. *Grabois v. Grosner*, 363 F.2d 979, 982 (D.C.Cir.1966).[13] No such language exists here. On the contrary, the first sentence of Article Seven uses the mandatory "shall," making clear the grantor's intention that the income belong to Mrs. Glendening. While the second sentence of the article arguably introduces a discordant note of ambiguity, this sentence can be easily harmonized with the mandatory language of the first sentence by construing it to apply only to distribution after, but not during, Mrs. Glendening's life. Such a construction yields a result consistent with the *Grabois* principle.

Moreover, extrinsic evidence concerning the grantor's intent convinces the Court that its construction of the Trust document is correct. In her affidavit, Hackman, the drafter of the Trust, states that the first sentence of Article Seven was intended by the grantor to be mandatory and the second to be merely a housekeeping provision which would not in any way affect Mrs. Glendening's absolute right to the Trust income. Additionally, Hackman's correspondence with Riggs demonstrates that payment of the Trust income was not intended to be discretionary. Such extrinsic evidence of a grantor's intent is pertinent and persuasive where, as here, there is an ambiguity in the written instrument. *See Estate of Mittelman*, 522 F.2d 132, 137. The government has produced no evidence indicating that the grantor entertained an

intent contrary to that explained by Hackman.

The government's authorities are not in point. In *Holbrook v. United States*, 575 F.2d 1288 (9th Cir.1978), the trustees were explicitly authorized, in their absolute discretion, to acquire or dispose of unproductive investments and to hold cash or readily marketable securities of little or no yield. *Id.* at 1289–90. Similarly, in *Estate of Pollack v. Commissioner*, 77 T.C. 1296 (1981), the trustee had absolute discretion to pay income to the wife or children in whatever proportions he wished. *Id.* at 1297. No such discretionary powers exist here. Nor is it significant, as the government belatedly argues, that the Trust designates no specific period for distribution. None is needed. In *Grabois*, the instrument stated only that the income be paid to the beneficiary for "the term of her natural life." 363 F.2d at 980. Yet, the court held that the trustee had no discretion to accumulate income. *Id.* at 981–82. The same result is warranted here.

### (B) Discretion to Invade the Principal.

Pointing to Article Eight, the government argues that the trustee, during Mrs. Glendening's life, had discretion to invade the income principal for the benefit of the children. This argument is groundless. Article Eight is, by its terms, applicable only "[o]n the death of the Grantor's wife...." Only after that event may the trustee make distributions for the benefit of the children. Any other construction of this article ignores and renders nugatory the quoted prefatory language as well as the plain meaning and intent of Article Seven, which gave Mrs. Glendening all the rights to the Trust's income.

### (C) Discretion to Invest the Principal.

The government's final attack on the Trust's suitability for reasonably accurate valuation stems from the trustee's invest-

---

**13.** *See also McLane v. Cropper*, 5 App.D.C. 276 (1895), which involved a trust that required that income be paid to the beneficiary, but in a subsequent sentence directed that, upon the beneficiary's death, the trustee should pay "the principal ... with all accumulations" to named persons. *Id.* at 278. The court held that this subsequent sentence did not confer discretion on the trustee to accumulate income. *Id.* at 297.

ment powers in Article Twelve. That Article permits the trustee to invest in assets "as it may deem best without being required to confine itself to such investments as are usual or as are approved or authorized by law for investment by fiduciaries." The government argues that valuation is precluded by the trustee's sweeping, "uncontrolled" investment powers. Again, this attack misses the mark. While Article Twelve does confer some discretionary investment powers on the trustee, those powers are neither unusual, nor "uncontrolled." Indeed, the Trust makes clear that after the Grantor's death, no securities, other than Treasury Bills or other temporary investments, could be bought or sold without Mrs. Glendening's approval in writing. Given this, it is difficult to view the trustee's investment powers as absolute or uncontrolled. Nor is *Holbrook*, the government's authority on this point, persuasive. There, the trustee had "absolute" discretion and unusual powers beyond those usually and customarily found in trusts. 575 F.2d 1288, 1290.

### III. *The Court's Jurisdiction to Order a Refund In Excess of the $35,562 Originally Claimed*

■ Because the IRS erred in disallowing the section 2013 credit, the Court must now resolve whether plaintiffs are limited to the refund originally sought, or whether they may sue for a larger amount based on a correct computation of the credit. The government urges the Court to decline jurisdiction over a claim in excess of $35,562

because (i) any such claim is barred by the statute of limitations governing refunds, and (ii) plaintiffs sought only $35,562 in the refund claim filed with the IRS.

The Court agrees with the government that the statutory limitations period prohibits any claim in excess of $35,562. Under 26 U.S.C. § 6511, a claim for a refund of an overpayment of any tax must be filed within three years from the time the tax return was filed or two years from the time the tax was paid, whichever period ends later. 26 U.S.C. § 6511(a). Here, because the estate's return was filed in April, 1983, and the refund claim was not filed until April, 1987, plaintiffs may not rely on the three-year provision of the statute. Plaintiffs' claim must, therefore, comply with the two-year limitation. If a taxpayer relies on the two-year provision, however, "the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2). The statute thus limits plaintiffs' recovery to $35,-562, the amount of tax paid during the two years preceding April, 1987.[14] *See Snyder v. United States*, 616 F.2d 1187, 1188 (10th Cir.1980); *Republic Petroleum Corp. v. United States*, 613 F.2d 518, 525 (5th Cir. 1980).

■ Plaintiffs contend that the government is estopped from asserting the statute of limitations because the miscomputation resulted from an error in the IRS' form and the IRS did not take adequate steps to correct the form.[15] The only au-

---

**14.** Plaintiffs actually paid $50,628.19 to the IRS on September 19, 1985 pursuant to the IRS' deficiency assessment against the estate. They do not contest, however, a portion of the assessment which arose from adjustments unrelated to the credit here at issue. The credit which was disallowed resulted in a deficiency assessment of $35,562, plus interest. It is the disallowance of this credit which formed the basis of plaintiffs' original request for a refund. Plaintiffs' recovery is therefore limited to $35,562, plus interest. *See Republic Petroleum Corp. v. United States*, 613 F.2d 518, 526-27 (5th Cir. 1980) (recovery limited to amount of overpayment in tax year at issue).

**15.** Plaintiffs also argue that the government has waived the statute of limitations because the

Answer did not include such a defense. The Court rejects this argument. As the IRS points out, plaintiffs' Complaint sought only $50,628.19 and "such greater amounts as may be legally recoverable." The Complaint contains nothing to notify the government that plaintiffs intended to recoup amounts paid because of erroneous computation of the tax credit. In fact, the error was not discovered until after the Complaint was filed. Plaintiffs have not amended their Complaint to include this new theory of recovery. Under the circumstances, therefore, defendant will not be deemed to have waived the statute of limitations defense. In any event, the government did assert in its Answer that jurisdiction is limited to "the amount of the assessment and the amount paid by plaintiffs." Answer, First Defense.

thority plaintiffs cite in support of their estoppel theory is *Simmons v. United States*, 308 F.2d 938 (5th Cir.1962). That case, however, did not involve a limitations period under the tax code. As the Supreme Court held in *Jones v. Liberty Glass Co.*, 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947), the statute of limitations applies regardless of whether it is the IRS' error or the taxpayer's error which leads to overpayment of taxes. *Id.* at 531, 68 S.Ct. at 232. While the result here may seem harsh,

> the loss which [the taxpayer] now suffers ... is a loss which is inherent in the application of any period of limitations. Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. Remedies for resulting inequities are to be provided by Congress, not the courts.

*Kavanagh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947) (citation omitted); *see also Yuen v. United States*, 825 F.2d 244, 245 (9th Cir.1987) (section 6511 is jurisdictional); *Republic Petroleum*, 613 F.2d 518, 527 (" 'general principles of equity may not override statutory requirements for timely filing of tax refund claims' ") (quoting *Kingston Products v. United States*, 368 F.2d 281, 288, 177 Ct.Cl. 471 (1966)).

In any event, the equities do not weigh as heavily in favor of plaintiffs as they would have the Court believe. While the IRS form Hackman used did contain an error, the IRS had issued a notice of correction five months prior to the filing of the estate return. Further, it appears to the Court that familiarity with Section 2013 would have led one to realize that a credit amount roughly one-third of the amount allowable was not correct.[16] Finally, the form was permanently corrected in January, 1984, a date well within Section 6511's three-year limitation.

Accordingly, plaintiffs may not claim a refund for taxes paid due to miscalculation of the credit. Given the Court's resolution of the statute of limitations question, it is unnecessary to address defendant's argument that plaintiffs' refund claim may not be fairly read to encompass the miscomputation issue.

### IV. *Conclusion*

As explained in this Opinion, the Court concludes that plaintiffs have standing to sue, that Mrs. Glendening's life estate was susceptible to valuation at the time of her husband's death and that plaintiffs are not entitled to any overpayment made due to the computation error. Plaintiffs are entitled to a refund of up to $35,562, plus interest, for the erroneous disallowance of the Section 2013 credit. It is unclear to the Court whether the government intends to dispute the amount of refund due plaintiffs under the principles announced in this Opinion. Accordingly, the parties are ordered to inform the Court on or before the close of business Friday, July 15, 1988, as to whether there is agreement on the total amount of refund to which plaintiffs are entitled. If the parties are in disagreement, they shall also submit on that date materials addressing whether summary judgment is appropriate as to the amount of the refund. An appropriate Order accompanies this Opinion.

---

16. As previously noted, the allowable Section 2013 credit is the lesser of (i) the amount of estate tax attributable to the transferred property in the prior decedent's estate, or (ii) the amount of estate tax attributable to the transferred property in the present decedent's estate. *See supra* note 5. Thus, knowledge of several variables would allow a tax preparer to estimate roughly the allowable credit. Those variables are the adjusted estate tax paid by the prior decedent's estate, the value of the property transferred, the value of the prior decedent's adjusted taxable estate, the net estate tax payable by the present decedent's estate and the estate tax payable by the present decedent excluding the value of the transferred property. *See* 26 C.F.R. §§ 20.2013–2, 20.20132–3.